**Joseph Anthony SMITH, Appellant**

**v.**

**The STATE of Texas, Appellee**

**NO. 14-15-00502-CR**

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion Filed March 9, 2017

Rehearing Overruled May 23, 2017

Rehearing En Banc Overruled June 20, 2017

Molly Wurzer, Houston, TX, for Appellee.

Sarah Vernier Wood, Houston, TX, for Appellant.

Panel consists of Chief Justice Frost and Justices Christopher and Jewell.

## OPINION [1]

Kem Thompson Frost, Chief Justice

Appellant Joseph Anthony Smith challenges his conviction and punishment for aggravated robbery with a deadly weapon. This three-issue appeal divides the panel three ways on the issue of whether the trial court erred, during the punishment phase of trial, in charging the jury that voluntary intoxication is not a defense to the commission of a crime. The author of this opinion finds no error, a concurring justice finds harmless error, and a dissenting justice finds harmful error. The upshot is a plurality decision on this issue. Today, the court also considers whether the trial court erred in failing to charge the jury on a lesser-included offense during the guilt/innocence phase of the trial and whether the trial court reversibly erred in overruling appellant's objection to the prosecutor's closing argument. A majority of the court finds against appellant on both issues. We affirm.

## I. Factual and Procedural Background

The complainant was backing his car out of the driveway heading towards the street around 5:00 a.m. when a man approached him wielding a gun. The man tapped the driver's-side window with the gun. Believing he was being robbed, the complainant handed the man his wallet and keys, saying, "Please take my wallet and keys. Please don't hurt me." The assailant asked the complainant if anyone else was home, and although both of the complainant's parents were at home, the complainant replied that nobody was at home because he did not want the assailant to think anyone was in the house. The assailant told the complainant to get back in the car, but the complainant refused. At that mo-

ment, a car drove down the street, distracting both the assailant and the complainant enough that the assailant moved the gun away from the complainant's face. The complainant grabbed the assailant's hand and began screaming for help while fighting with him for the gun. The two struggled, with the assailant attempting to muffle the complainant's screams.

The car driving down the street did not stop to help the complainant, but the complainant's neighbor heard his screams and came outside with a gun. The neighbor ordered the assailant to drop the gun. The assailant released the gun and ran away.

The neighbor pursued the assailant, telling him to get on the ground. The assailant did not comply, but a second neighbor came out of his home with a weapon and pursued the assailant, who eventually stopped running. The second neighbor brought the assailant back down the street and forced him to wait until police arrived. The complainant brought the assailant's gun into the complainant's house and eventually turned the gun over to responding police officers.

Appellant was charged with aggravated assault with a deadly weapon. He pleaded "not guilty."

### Guilt/Innocence Phase

The complainant and the first neighbor described what happened during their testimony at trial in the guilt/innocence phase. The trial court also admitted into evidence recordings of several phone calls appellant placed while he was incarcerated. In these phone calls, appellant repeatedly discussed the incident, characterizing it as a robbery, and explaining that his motivation was his lack of money.

1. Section II. A. of this opinion is a plurality opinion of Chief Justice Frost. Justice Jewell joins the remainder of the opinion, making it a majority opinion of the court.

Appellant asked the trial court to charge the jury on the lesser-included offense of aggravated assault. The trial court denied appellant's request. The jury found appellant guilty as charged.

### Punishment Phase

During the punishment phase of the trial, the State presented evidence of other bad acts the State alleged appellant had committed, including an assault and a capital murder. Appellant introduced evidence that he had used the drug Xanax from his youth up to the point of appellant's incarceration. Appellant presented an expert witness who testified about the effects of Xanax use. Over appellant's objection, the trial court included in the punishment-phase jury charge an instruction that voluntary intoxication is not a defense to the commission of a crime.

During the State's closing argument in the punishment phase, the prosecutor referred to appellant's reaction to testimony from the sister of the man killed in the capital murder allegedly committed by appellant. The trial court overruled appellant's objection.

The jury assessed punishment at confinement for life.

### II.  Issues and Analysis

Appellant raises three issues on appeal, challenging his conviction in the first issue (asserting jury-charge error) and his punishment in the second and third issues (asserting error in the punishment-phase jury charge and closing arguments). Because the second issue divides the panel three ways, we begin with it.

### A.  Punishment-Phase Jury Instruction

Appellant argues in his second issue on appeal that the trial court erred in charging the jury that voluntary intoxication is not a defense to the commission of a crime.

During the punishment phase of trial, the State introduced evidence that appellant had committed an extraneous offense, capital murder, the day before the aggravated robbery. The record contains evidence that appellant was addicted to Xanax, and intoxicated by Xanax, at the time of the charged aggravated-robbery offense and the time of the alleged capital murder. Appellant's sole punishment witness, Dr. Terry Rustin, testified that Xanax can cause aggressive or criminal behavior that an individual otherwise would not exhibit because the drug reduces inhibitions and causes people not to worry about the consequences of their actions.

The State asked the trial court to charge the jury that voluntary intoxication is not a defense to the charged aggravated-robbery offense, for which appellant already had been convicted. Appellant objected on the grounds that the instruction was not appropriate in the punishment phase and would cause the jury to ignore Dr. Rustin's testimony. The trial court overruled appellant's objection. But, the trial court told the jury, by written instruction, that the jury could consider all the facts shown by the evidence in assessing appellant's punishment.

In the charge, the trial court instructed the jury that "voluntary intoxication does not constitute a defense to the commission of a crime. 'Intoxication' means disturbance of mental or physical capacity resulting from the introduction of any substance into the body." After giving the voluntary-intoxication instruction, the trial court instructed the jury that "the mere presence of the defendant at the scene of the offense is not sufficient to conclude the accused committed the offense beyond a reasonable doubt." Following that instruction, the trial court told the jury that it could consider evidence of an extraneous

crime or bad act in assessing punishment even if the defendant had not yet been charged with or finally convicted of the crime or act only if the State had shown beyond a reasonable doubt that the defendant committed the extraneous crime or bad act or that it is one for which the defendant could be held criminally responsible. Towards the end of the charge, the trial court instructed the jury that "in fixing the defendant's punishment ... you may take into consideration all the facts shown by the evidence admitted before you in the full trial of this case."

▮ In reviewing a complaint of jury-charge error, we first determine whether error occurred, and, if we find error, then we evaluate whether the error caused sufficient harm to require reversal. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

▮ The jury charge correctly stated that voluntary intoxication is not a defense to the commission of a crime. *See* Tex. Penal Code § 8.04(a) (West, Westlaw through 2015 R.S.). Even so, evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which the actor is being tried. *See id.* § 8.04(b); *Martinez v. State*, 17 S.W.3d 677, 691 n.14 (Tex. Crim. App. 2000). Appellant did not argue that at the time of the charged offense he was temporarily insane because of intoxication, that he did not know his conduct was wrong, or that he was incapable of conforming his conduct to the law. Nor did appellant ask the trial court to give an instruction that the jury consider temporary insanity caused by intoxication as mitigating evidence, and appellant did not argue below or on appeal

that he should have received such an instruction.

The challenged statement—that voluntary intoxication is not a defense to the commission of a crime—is a correct statement of the law. *See* Tex. Penal Code § 8.04(a). But, it did no work in the punishment-phase charge.

Under *Haley v. State*, in the punishment phase, the jury does not determine beyond a reasonable doubt whether the defendant is guilty of any criminal offense, nor does the jury determine whether any alleged extraneous crime or bad act constitutes a criminal offense. *See Haley v. State*, 173 S.W.3d 510, 514–15 (Tex. Crim. App. 2005). Though the voluntary-intoxication instruction was unnecessary and out of place, it accurately stated the law and did not tell the jury to disregard evidence of voluntary intoxication in assessing punishment. *See* Tex. Penal Code § 8.04(a); *Haley*, 173 S.W.3d at 514–15. If the jury believed it could not consider the voluntary-intoxication evidence in mitigation of appellant's punishment, as the dissenting justice concludes, then that belief could not have been based on the words in the charge.

▮ The charge plainly stated the jury could consider all the evidence. An instruction that is "clear and unambiguous on its face"[2] does not amount to error. The dissenting justice asserts that the Court of Criminal Appeals's opinion in *Taylor v. State* compels the conclusion that an instruction under Penal Code section 8.04(a) does not belong in a punishment-phase charge.[3] The *Taylor* court concluded that the trial court did not err in including a section 8.04(a) instruction in the guilt/innocence charge, and the high court noted that this subsection is directed to the guilt/innocence phase. *See Taylor v. State*,

---

2. *See* post at 6 (Jewell, J., concurring).

3. *See* post at 2–3 (Christopher, J., dissenting).

885 S.W.2d 154, 156–58 (Tex. Crim. App. 1994). But, the *Taylor* court did not say that including a section 8.04(a) instruction in a punishment-phase charge automatically amounts to error. *See id.* The *Taylor* precedent does not mandate a finding of charge error in today's case.

■ Not every out-of-place instruction infuses the charge with error. In *Gomez*, this court held that the trial court did not abuse its discretion in refusing to give a self-defense instruction in the punishment phase. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000); *Gomez v. State*, 380 S.W.3d 830, 837–38 (Tex. App.— Houston [14th Dist.] 2012, pet. ref'd). Yet, this holding does not mean that a trial court per se errs by including a section 8.04(a) instruction in the punishment-phase charge. *See Gomez*, 380 S.W.3d at 837–38. Sometimes trial courts include unnecessary instructions in the jury charge. The surplus may render the charge imperfect without creating error.

■ To determine if the misplaced instruction amounts to error, we must look at the reasons it would be wrong to include the instruction in the charge. If those reasons are not implicated, then the inclusion of the out-of-place instruction cannot fairly be characterized as error. In today's case appellant points to jury confusion over the ability to consider mitigating evidence as the reason the trial court erred in including the challenged instruction. In this context, jury confusion would equate to charge error. And, conversely, if the plain language of the challenged instruction could not have confused a reasonable jury, then the instruction, though misplaced, would not amount to error.

Through the charge, the trial court told the jury that, in assessing appellant's punishment, the jury could consider all of the evidence. *See Casey v. State*, 215 S.W.3d 870, 886–87 (Tex. Crim. App. 2007); *Riddle*

*v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994). And, the evidence included Dr. Rustin's testimony about appellant's voluntary intoxication on Xanax. Because nothing in the charge contradicted the statement that the jury could consider this evidence, a reasonable jury could not have believed, as appellant urges, that the jury had to disregard Dr. Rustin's testimony. The plain wording of the punishment-phase charge belies appellant's argument that the voluntary-intoxication instruction led the jury to believe it could not consider appellant's voluntary intoxication in fixing appellant's punishment. *See Casey*, 215 S.W.3d at 886–87; *Riddle*, 888 S.W.2d at 8. To conclude otherwise, this court would have to say that a charge that tells the jury it can consider all evidence means the jury could not consider some evidence.

■ Jurors, like everyone else, are trapped in the human condition. All are subject to "potential confusion" all the time. But, we must not presume that jurors will be misled by clear and unambiguous instructions. Instead, we should credit the jury with understanding plain English and with being able to distinguish between voluntary intoxication as a defense to a crime and voluntary intoxication as mitigating circumstances for punishment. That an instruction is meant for the guilt/innocence phase of trial rather than the punishment phase does not mean it is error per se to include it in the punishment-phase charge. When the challenged instruction could not mislead the jury, its inclusion is not cognizable error.

Appellant's second issue is overruled.

## B. Denial of Jury Instruction on Lesser-Included Offense

■ The Texas Code of Criminal Procedure provides, "[i]n a prosecution for an offense with lesser included offenses,

the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense." Tex. Code Crim. Proc. art. 37.08 (West, Westlaw through 2015 R.S.). We determine whether a defendant is entitled to a lesser-included offense instruction by conducting a two-step analysis. *Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011). In the first step, we decide whether the purported lesser-included offense falls within the proof necessary to establish the offense charged. *Id.* at 68. To make this determination, we compare the statutory elements and any descriptive averments in the indictment for the greater offense with the statutory elements of the lesser offense. *Id.* Because a defendant cannot be held to answer a charge not contained in the indictment brought against him, the evidence produced at trial does not determine the lesser-included offense.

The State indicted appellant for aggravated robbery with a deadly weapon, alleging that while in the course of committing theft of property owned by the complainant, and with intent to obtain and maintain control of the property, appellant intentionally and knowingly threatened the complainant and placed him in fear of imminent bodily injury and death while exhibiting a deadly weapon, namely, a firearm. *See* Tex. Penal Code Ann. §§ 29.02, 29.03 (West, Westlaw through 2015 R.S.). A person commits aggravated assault if the individual commits assault by intentionally or knowingly threatening another with imminent bodily injury, and the individual uses or exhibits a deadly weapon during the commission of the assault. *See* Tex. Penal Code Ann. §§ 22.01(a), 22.02(a) (West, Westlaw through 2015 R.S.). The proof necessary for the elements of aggravated assault with a deadly weapon is encompassed within the proof necessary to establish the aggravated robbery charged in the indictment. *See Zapata v. State*, 449

S.W.3d 220, 225 (Tex. App.—San Antonio 2014, no pet.).

The second step of the lesser-included-offense analysis is to determine if there is some evidence from which a rational jury could acquit the defendant of the greater offense while convicting the defendant of the lesser-included offense. *Sweed*, 351 S.W.3d at 68. The evidence must establish the lesser-included offense as a "valid rational alternative to the charged offense." *Id.* (quoting *Segundo v. State*, 270 S.W.3d 79, 90–91 (Tex. Crim. App. 2008)). We review all of the evidence presented at trial. *Id.* Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser-included-offense charge. *Id.* Although a scintilla of evidence is a low threshold, "it is not enough that the jury may disbelieve some crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Id.* (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)). This standard may be satisfied if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations. *Id.*

In his first issue, appellant argues that because the complainant testified that the complainant gave appellant his wallet before appellant could say anything, and because the complainant's wallet was found in the grass near the site of the incident, rather than on appellant's person, the evidence was subject to the interpretation that appellant intended to commit the lesser-included offense of aggravated assault rather than aggravated robbery. Appellant acknowledges that he made a phone call from jail in which he stated that

he intended to go inside the complainant's home and take things, but appellant argues that the phone call is unclear.

The complainant testified at trial that he handed his wallet to appellant, but then he and appellant began struggling over a gun. Appellant eventually ran away from the scene. This testimony suggests that appellant dropped the complainant's wallet during the ensuing struggle, not that appellant was uninterested in the complainant's wallet. This conclusion is bolstered by appellant's statements made after his incarceration.

Appellant made many phone calls in which he discussed the incident. In all of these phone calls, appellant described the incident as an aggravated robbery. In several phone calls, appellant referred to the complainant as either the "dude who was getting aggravatedly [sic] robbed" or the "[expletive] I aggravatedly [sic] robbed." In one phone call, appellant stated that he intended to put the complainant back in the car so he could go inside the house and see what was there. In a phone call between appellant and his father, appellant commented that he did not have anyone to blame "except being broke and stupid." In a phone conversation between appellant and his mother, appellant's mother stated that she did not understand why appellant committed the crime, noting that if he was trying to get her attention, appellant had her attention a long time ago. Appellant responded, "it's all about the money." Appellant explained that he was late on his rent, did not have a phone, and could not afford to pay for electricity to run the lights. In a phone call with a friend, the friend told appellant that appellant should have stayed home, but he got greedy. In yet another phone call, appellant stated that if his accomplice had not left in the middle of the crime, appellant would have the complainant's phone and the complain-

ant's cash and property, but, instead, because the accomplice left, and appellant was unable to complete the crime as intended, appellant was in trouble.

The record also reveals that appellant did not know the complainant and there was no evidence of any motive to assault the complainant other than to take the complainant's property. The evidence presented to the jury was subject to only one interpretation: appellant sought to rob the complainant. Accordingly, the trial court did not err in failing to charge the jury on the lesser-included offense of aggravated assault. *See Stewart v. State*, 995 S.W.2d 251, 254 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding trial court did not err in refusing instruction on lesser-included offense when testimony showed defendant was guilty of charged offense or no offense at all). We overrule appellant's first issue.

### C. Punishment-Phase Jury Argument

█ In his third issue, appellant asserts that the prosecutor made an improper comment on the demeanor of a non-testifying witness during closing argument in the punishment phase of trial and that this utterance amounted to a comment on appellant's failure to testify. During the punishment phase of trial, the State introduced evidence that the day before the charged offense appellant killed a man by shooting him with a gun at close range. During closing argument the prosecutor stated:

> You also heard about the capital murder of [another individual], which was committed on February 12th of 2012. You heard that that was a contact wound to the side of the head. Imagine what the end of [that individual's] life was like. You heard his sister testify about the funeral service and having to cover up that wound in the head, and you heard

about his children. And I hope that during that testimony you got an opportunity to see how the defendant reacted to that. Nothing, absolutely nothing; never a sign of remorse, never; never a sign of remorse. That is just plain wrong. That is evil, that is something you don't want in our community.

Appellant objected that the prosecutor's statements constituted an improper argument, outside the record, about how appellant looked during testimony. The trial court overruled appellant's objection. Presuming for the sake of argument that the trial court erred in overruling appellant's objection, the issue provides no basis for relief on appeal.

▮ Because we presume for purposes of this analysis that the prosecutor's comment violated appellant's privilege against self-incrimination, we also presume the error was of a constitutional magnitude and conduct our assessment of harm using the standard set forth in Texas Rule of Appellate Procedure 44.2(a). *See Snowden v. State*, 353 S.W.3d 815, 818 (Tex. Crim. App. 2011); *Crayton v. State*, 463 S.W.3d 531, 536 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Under this presumption, we must reverse the judgment unless we conclude beyond a reasonable doubt that the presumed error did not contribute to the defendant's conviction or punishment. *See* Tex. R. App. P. 44.2(a); *Snowden*, 353 S.W.3d at 818; *Crayton*, 463 S.W.3d at 536.

As a reviewing court, we must calculate as nearly as possible the probable impact of the error on the jury in light of the record as a whole. *Wall v. State*, 184 S.W.3d 730, 746 (Tex. Crim. App. 2006). We consider factors such as the nature of the error, whether the State emphasized the error, the probable implications of the error, and the weight the jury likely would have assigned to the error in the course of its deliberations. *See Snowden*, 353 S.W.3d

at 822, *Crayton*, 463 S.W.3d at 536. These factors are not exclusive; other considerations also may inform the harm analysis. *See Thompson v. State*, 426 S.W.3d 206, 211 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). If the reviewing court finds a reasonable likelihood that the error materially affected the jury's deliberations, the trial court's error is not harmless beyond a reasonable doubt. *See Neal v. State*, 256 S.W.3d 264, 284 (Tex. Crim. App. 2008).

### 1. Nature and emphasis of the presumed error

The presumed error violates the constitutional right against self-incrimination. The trial court overruled appellant's objection to the statement, thereby conveying to the jury that it could consider the prosecutor's statement. This factor weighs in favor of finding the presumed error to be harmful. *See Whitehead v. State*, 437 S.W.3d 547, 553 (Tex. App.—Texarkana 2014, pet. ref'd). Next, we examine the extent, if any, to which the State emphasized the error. The State did not refer to appellant's demeanor after the disputed comment, although the prosecutor did state again, after arguing that the evidence showed appellant had committed capital murder, that appellant had no remorse for his action. The primary emphasis of the prosecutor's closing argument was appellant's lengthy history of violent acts, before and after his incarceration, and appellant's violence at times when he was not using Xanax. *See Grant v. State*, 218 S.W.3d 225, 234 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). The prosecutor's commentary about appellant's lack of remorse was brief and was not stressed during the closing argument. *See Crayton*, 463 S.W.3d at 536.

### 2. Probable implications of error and weight

Under the third and fourth factors discussed in *Snowden*, we are to consider the

probable implication of the presumed error and the weight the jury likely would have placed upon it. *See Snowden*, 353 S.W.3d at 822. During the punishment phase of trial, the State introduced evidence that appellant had a prior record of convictions: theft in 2008 and 2010, possession of marijuana in 2009, possession of marijuana and driving while intoxicated in 2010, and possession of marijuana and assault on a family member in 2011. In addition to these convictions, the record showed appellant had assaulted a friend and also had assaulted an inmate in jail, and appellant also killed a man by shooting him in the head at close range. The record also contained evidence that appellant had a Xanax addiction. Appellant did not have a prescription for Xanax and obtained money to purchase Xanax by selling the drug.

With respect to the assaults on appellant's friend, appellant's friend testified that appellant began punching the friend in the face because appellant believed the friend was trying to get the attention of appellant's girlfriend. The friend testified that he had injuries all over his face. Later that night, the friend got into the friend's vehicle and appellant appeared, attempting to fight the friend again. Appellant broke the friend's windshield. The friend was able to put the car in reverse, leave, and call the police. On another occasion, the friend was walking to a neighbor's house and appellant attempted to fight the friend again, but the friend was able to run away.

The State also presented evidence from Deputy Augustine Mendoza, a detention officer monitoring a cell block where appellant was confined. Appellant asked Deputy Mendoza if appellant could leave the cell block and go to a place where he could be by himself. Deputy Mendoza told appellant the answer was "no." Appellant got Deputy Mendoza's attention, waving his hands over his head, and then walked over to a steel table where another inmate was eating food and struck the inmate in the head from behind with a closed first. The inmate's head hit the steel table, and when the inmate attempted to pick up his head, appellant continued hitting the inmate with a closed fist until the inmate was unconscious. The inmate required treatment at a hospital. Deputy Mendoza testified that the inmate and appellant had no history of controversy or aggression before this incident.

Finally, the State introduced evidence that the day before the charged aggravated-robbery offense, appellant shot a man in the head. The evidence showed that the body of an Asian man, Hong Le, was found in the man's car the day before the charged offense. Police did not find a wallet, cellphone, car keys, or Le's clothing. Dr. Stephen Wilson testified that Le sustained six gunshot wounds and those gunshots were the cause of death. Dr. Wilson found soot on Le's head, indicating that a firearm was placed against his skin when the gun was discharged. Officer April Palatino processed the vehicle, taking DNA swabs and tape lifts. Officer Glover took fingerprints from appellant while appellant was incarcerated. Kirk Miller, a scientist in the Houston Police Department Forensic Science Center, determined that latent fingerprints found on the vehicle in which Le's dead body was discovered matched appellant's fingerprints.

One of appellant's neighbors, a woman who often fed appellant leftover food, testified that appellant confessed to her that he had killed someone. The neighbor testified that she was headed home from church on a Sunday and ran into appellant who told her he had done something stupid. The neighbor asked what appellant had done, and appellant told her he killed somebody. The neighbor testified that she asked him why he did it and he started to tell her

what happened. Appellant told the neighbor he had killed an Asian man.

During the guilt/innocence phase of trial, the State introduced evidence of many phone calls appellant made while incarcerated. In one phone call, appellant mentioned that "they got the thing that was used," worrying that the police would "put two and two together." Appellant also stated that he was worried about what else the police "might have on [him]." In another phone call, the speaker said, "You got away lucky the first time." In yet another phone call, appellant noted that he had been charged with capital murder, stating "if I get away with this, it's gonna be crazy."

Le's sister testified during the punishment phase. She stated that Le had a ten-year-old daughter and his girlfriend had a thirteen-year-old daughter that Le treated as his own. Le's sister described the things she loved about her brother and described her mother's experience going to the morgue to identify her brother's body. Le's mother was not allowed to see her son's body; they simply had her sign the waiver to transfer his body to the funeral home. Le explained that her brother had so many injuries to his head that the funeral home suggested a closed-casket funeral, but they opted to place a towel over her brother's forehead so that people still could view the face.

Appellant called Dr. Terry Rustin as his sole witness during the punishment phase. Dr. Rustin testified that appellant was addicted to Xanax, a drug that lowers one's inhibitions and can cause one to commit crimes one otherwise would not commit because one does not have an appreciation of the consequences of one's actions.

Appellant's record of violent conduct, as well as the statements appellant made in phone calls, showed appellant's focus was on his future, not the effects of any crimes he committed. Appellant showed his disregard for others after Le's killing by robbing the complainant the next morning and attempting to shoot the complainant during the struggle connected with the robbery. Appellant did not show any heightened concern for others when he beat another inmate unconscious. The jury already had access to this information, which provided the jury with insight into appellant's mentality and values. The prosecutor's comment was brief and its impact minimal, particularly in light of the extensive evidence before the jury. *See Crayton*, 463 S.W.3d at 536. Based upon the record, we conclude beyond a reasonable doubt that the presumed error did not contribute to the defendant's conviction or punishment. *See* Tex. R. App. P. 44.2(a); *Snowden*, 353 S.W.3d at 825; *Crayton*, 463 S.W.3d at 536; *Grant*, 218 S.W.3d at 234; *Wall v. State*, 286 S.W.3d 372, 376 (Tex. App.—Corpus Christi 2008, pet. ref'd) (holding constitutional violation during closing argument of punishment phase harmless under *Harris* factors, which were revised in *Snowden*). Accordingly, we overrule appellant's third issue. *See id.*

### III. Conclusion

Two justices agree that appellant's second issue challenging the trial court's voluntary-intoxication jury instruction should be overruled; but, because these justices agree only on the judgment and not on the reasons for this decision, section II. A. is a plurality opinion. A majority of the court finds in section II. B. that the trial court did not err in failing to charge the jury on the lesser-included offense of aggravated assault during the guilt/innocence phase of the trial. Presuming for the sake of the argument that the trial court erred in overruling appellant's objection to the prosecutor's closing-argument comments about appellant's in-court demeanor, a ma-

jority of the court, in section II. C., concludes beyond a reasonable doubt that those comments did not affect appellant's conviction or punishment, and so any error was harmless. Having overruled appellant's issues, we affirm the trial court's judgment.

(Jewell, J., concurring)

(Christopher, J., dissenting)

Kevin Jewell, Justice, concurring

I join Chief Justice Frost's opinion with the exception of section II.A. I write separately to address appellant's second issue, in which he seeks a new trial on punishment. Appellant contends the trial court erroneously included a voluntary intoxication instruction in the punishment phase jury charge when the instruction is permissible only in the guilt/innocence phase charge. I conclude the challenged instruction was error under the circumstances of this case. However, based on my review of the record in light of the harm factors articulated in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g), I would hold that the erroneous instruction did not cause appellant actual harm under the present circumstances. Accordingly, I agree with the plurality that we should overrule appellant's second issue, although for different reasons, and concur in affirming the judgment.

**A. Charge Error**

A jury convicted appellant of aggravated robbery with a deadly weapon. In the pun-

ishment phase, the trial court included the following instruction in the jury charge, over appellant's objection:

> Voluntary intoxication does not constitute a defense to the commission of a crime. "Intoxication" means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.[1]

The trial court should have sustained appellant's objection. In *Taylor v. State*, 885 S.W.2d 154, 156 (Tex. Crim. App. 1994), the Court of Criminal Appeals addressed the propriety of including an identical instruction in a jury charge. Though the instruction in *Taylor* appeared in the guilt/innocence charge and not the punishment charge, the court addressed the purpose of Texas Penal Code section 8.04(a) and clearly stated it is not a mitigation provision but is "directed to the guilt/innocence phase of trial." *Id.* I agree with our dissenting colleague that *Taylor* speaks plainly enough on this point, though no published Texas case has squarely addressed whether inclusion of an instruction under section 8.04(a) in the punishment charge constitutes error.[2]

This is not to say I believe an instruction under section 8.04(a) would never be appropriate in a punishment phase jury charge. For example, language tailoring such an instruction to particular evidence or a defense may serve, in certain cases, to "lead and to prevent confusion," as jury charges are supposed to do. *See Reeves v. State*, 420 S.W.3d 812, 818 (Tex. Crim. App. 2013). Here, the instruction could

---

1. The instruction tracked the statutory language verbatim from Texas Penal Code sections 8.04(a) and (d). Tex. Penal Code § 8.04(a), (d).

2. In *Kresse v. State*, No. 02-09-00271-CR, 2010 WL 1633383 (Tex. App.—Fort Worth Apr. 22, 2010, no pet.) (mem. op., not des-

ignated for publication), the appellant challenged the inclusion of a section 8.04(a) voluntary intoxication instruction in the punishment phase jury charge. *Id.* at *2. But the state conceded error, and the court of appeals did not reach the issue.

have been modified to apply only to extraneous offenses.[3]

## B. Harm Analysis

Because appellant preserved error by objecting to the voluntary intoxication instruction at trial, he is entitled to reversal if the record shows that the erroneous instruction was "calculated to injure [his] rights." Tex. Code Crim. Proc. art. 36.19; *Reeves*, 420 S.W.3d at 816; *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171. The Court of Criminal Appeals has interpreted this requirement to mandate reversal only when the charge error caused "some" harm—meaning any harm, regardless of degree, is sufficient to require reversal so long as the defendant "suffered some actual, rather than merely theoretical, harm from the error." *Reeves*, 420 S.W.3d at 816; *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986).

To gauge "actual" harm, we consider the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the trial record as a whole. *See Reeves*, 420 S.W.3d at 816; *Wooten*, 400 S.W.3d at 606; *Bailey v. State*, 867 S.W.2d 42, 43 (Tex. Crim. App. 1993); *Almanza*, 686 S.W.2d at 171. We conduct this analysis independently because neither appellant nor the State has the burden to prove harm. *Reeves*, 420 S.W.3d at 816.

Whether the outcome of the punishment trial *could* have been affected by the erroneous instruction is not the question. *See Wooten*, 400 S.W.3d at 604, 606, 610. To support reversal, the degree of harm resulting from charge error must rise above possibilities and courts must delve into "the extent to which the outcome of trial was actually affected." *See Saunders v. State*, 817 S.W.2d 688, 690 (Tex. Crim. App. 1991); *see also Wooten*, 400 S.W.3d at 604, 606, 610 (court of appeals must address likelihood that jury would have made finding in question). Yet, as a practical matter, courts have not consistently described the point at which harm evolves from "theoretical" into "actual" harm in terms of an articulable degree of likelihood.[4] Sometimes, courts have considered whether actual harm appears "reasonably likely" or "likely;"[5] in other cases, courts have looked for "fair assurance;"[6] still other times, courts have reached a decision without specifically stating any particular degree of likelihood required.[7] In my view,

3. In support of the conclusion that including the voluntary intoxication instruction in the punishment phase charge was not error, the plurality states that the absence of tailoring language does not render the instruction misleading. While I believe it is not reasonably likely the jury was misled by the voluntary intoxication instruction in this case, in my view that question is much more pertinent to the harm analysis rather than whether the instruction was error in the first instance.

4. The elusiveness of a consistently stated test may be in part by design. *See Saunders*, 817 S.W.2d at 689 ("Much of the impetus for our holding in *Almanza* was a perceived need to avoid the tyranny of hard and fast rules.").

5. *See, e.g., Ross v. State*, 133 S.W.3d 618, 624 (Tex. Crim. App. 2004); *Herrera v. State*, No. 04-16-00138-CR, 513 S.W.3d 223, 229, 2016 WL 7480502, at *5 (Tex. App.—San Antonio Dec. 30, 2016, no pet. h.); *Mendoza v. State*, 349 S.W.3d 273, 283 (Tex. App.—Dallas 2011, pet. ref'd).

6. *Trevino v. State*, 100 S.W.3d 232, 243 (Tex. Crim. App. 2003) (per curiam).

7. *See, e.g., Reeves*, 420 S.W.3d at 816; *Dickey v. State*, 22 S.W.3d 490, 492-93 (Tex. Crim. App. 1999); *Abdnor v. State*, 871 S.W.2d 726 (Tex. Crim. App. 1994); *Arline*, 721 S.W.2d at 353; *Bravo v. State*, 471 S.W.3d 860, 871 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).

whether appellant is entitled to a new punishment trial depends on the substantive border between theoretical and actual harm under the present circumstances. I will draw the line at whether, in light of the *Almanza* factors, there exists a reasonable likelihood that the erroneous instruction actually affected the outcome. *Ross*, 133 S.W.3d at 624 (unable to conclude there was reasonable likelihood that charge error caused actual harm).[8] I invite the Court of Criminal Appeals to address and clarify these issues should it be so inclined.

Appellant argues the voluntary intoxication instruction actually harmed him because a reasonable juror would have interpreted it as an instruction to completely disregard his evidence of intoxication—Xanax addiction—for mitigation of punishment purposes. Under *Almanza* and its progeny, we must determine the likelihood that the jury would not have considered appellant's intoxication evidence for mitigation purposes under the circumstances of this particular case. *See Wooten*, 400 S.W.3d at 608-09 (determining likelihood that jury would have believed appellant acted out of sudden passion had instruction been provided); *see also Herrera*, 513 S.W.3d at 229, 2016 WL 7480502, at *5. If the jury considered appellant's voluntary intoxication evidence but afforded it little or no weight, then appellant suffered no actual harm from the challenged instruction. In that instance, the jury would have been within its right to assess the maximum punishment, and the law would not support dislodging the verdict.

In my view, based on this record, any likelihood that the jury would have construed the instruction as a directive to not consider the voluntary intoxication evidence is not sufficient to constitute actual harm. The *Almanza* factors support this conclusion.

### 1. The entire charge

I begin by evaluating the jury charge as a whole. The instruction at issue did not tell the jury to disregard appellant's voluntary intoxication evidence in assessing punishment. Rather, it said, "[v]oluntary intoxication does not constitute a defense to the commission of a crime." Assuming the instruction, viewed in isolation, potentially created confusion as to whether the jury was permitted to consider appellant's voluntary intoxication evidence, the risk of actual confusion was ameliorated by very explicit instructions appearing later in the charge. The trial court told the jury in no uncertain terms that it "may take into consideration all the facts shown by the evidence admitted before you in the full trial of this case"—which necessarily included all the voluntary intoxication evidence admitted during both the guilt/innocence and punishment phases. That instruction is clear and unambiguous on its face, and we are to presume the jury followed it. *See Elizondo v. State*, 487 S.W.3d 185, 208 (Tex. Crim. App. 2016); *Miles v. State*, 204 S.W.3d 822, 827-28 (Tex. Crim. App. 2006); *Rose v. State*, 752 S.W.2d 529, 554 (Tex. Crim. App. 1987) (op. on reh'g),

---

**8.** I embark on the harm analysis in this case, like every case, without the benefit of information that would most clearly establish whether a particular instruction in reality had any effect on the jury's verdict: juror testimony. Tex. R. Evid. 606(b). Courts may not consider direct evidence from the jury as to what factors motivated its deliberations and verdict. Tex. R. Evid. 606(b). Thus, in applying the *Almanza* factors, we will never know with certainty whether the error made a difference in the outcome. Rather, the *Almanza* exercise will yield merely an assessment of harm to the degree of likelihood necessary to show "some" harm based on the peculiarities of each case. Some harm occurs, and reversal is required, if we find the likelihood of harm exceeds the "theoretical."

*abrogated on other grounds by Karenev v. State*, 281 S.W.3d 428 (Tex. Crim. App. 2009).[9]

When a trial court instructs the jury properly elsewhere in the charge or during trial, an erroneous instruction is generally harmless. *See, e.g., Ross*, 133 S.W.3d at 623-24; *Castaneda v. State*, 852 S.W.2d 291, 295-96 (Tex. App.—San Antonio 1993, no pet.) (jury given proper instruction elsewhere during trial); *see also Henriksen v. State*, 500 S.W.2d 491, 496 (Tex. Crim. App. 1973) (instruction omitted from punishment charge was referenced in guilt/innocence charge and sufficient to fully protect defendant's rights); *cf. Ngo v. State*, 175 S.W.3d 738, 752 (Tex. Crim. App. 2005) (noting that charge error was not ameliorated elsewhere in another portion of the charge).

Moreover, a reasonable juror would have likely construed the instruction as pertaining to the extraneous crimes and bad acts evidence, most of which the State introduced without objection. The dissent disputes this assertion because, it contends, a section 8.04(a) instruction is irrelevant to extraneous crimes or bad acts evidence, and because of the challenged instruction's relatively segregated placement within the charge as a whole. I respectfully disagree. The dissent's first contention is inconsistent with the record. The voluntary intoxication instruction pertained to the extraneous crimes issue because there was evidence appellant was taking Xanax at the time of at least some of the extraneous acts. *See Taylor*, 885 S.W.2d at 158 (when there is evidence from any source that might lead a jury to conclude the defendant's intoxication somehow excused his actions, an instruc-

tion that voluntary intoxication is not a defense is appropriate). Appellant's counsel notably appreciated this fact, as he urged the jury during closing argument to account for the intoxication evidence in weighing the alleged extraneous crimes and bad acts. The court told the jury it could consider extraneous "crimes"; the court also told the jury that voluntary intoxication is not a defense to a "crime." If the jury understood the challenged instruction as applying to extraneous crimes or bad acts evidence, then all the instruction would have led the jury to believe is that appellant's Xanax addiction did not prevent it from finding that appellant committed extraneous crimes beyond a reasonable doubt. But it does not follow that the jury could not consider the voluntary intoxication evidence in assessing punishment for the charged offense.

Second, the dissent is correct that an instruction's placement in the charge may in some cases weigh in favor of finding some harm. *Reeves*, 420 S.W.3d at 819. Here, however, I would hold that any potential confusion suggested by the instruction's location within the body of the charge was clarified by the subsequent explicit directive to consider all of the evidence. Again, to be sure, tailoring language would have provided greater clarity when reading the voluntary intoxication instruction in conjunction with the later instruction to consider all the evidence from the entire trial. But I do not believe a reasonable jury would be so misled by this charge as a whole. It could have construed and applied both instructions without inconsistency based on the evidence and arguments presented to it.

9. I distinguish the character of the present instruction from that at issue in *Reeves*, in which the court stated that only "understandable" instructions warrant a presumption that juries followed them. *Reeves*, 420 S.W.3d at 818. The language here at issue is unlike the "impenetrable" "argle-bargle" in *Reeves*. *Id.* at 817.

It is not reasonably likely that the jury would have construed the instruction as appellant suggests for other reasons. For example, the State did not object to appellant's voluntary intoxication evidence, and the court admitted all of it. At no time during the trial did the court instruct the jury not to consider any part of the voluntary intoxication evidence. I do not believe a reasonable juror would have interpreted a section 8.04(a) charge instruction as a directive to disregard the totality of intoxication evidence without the instruction explicitly saying so, considering the intoxication evidence was admitted without objection.

Finally, the jury did not send any notes during deliberations indicating confusion about whether it was free to consider appellant's voluntary intoxication evidence. *See Ross*, 133 S.W.3d at 624.

Considering the charge as a whole, I do not believe the erroneous instruction resulted in a reasonable likelihood that the jury was so misled as to believe it could not consider appellant's voluntary intoxication evidence. Thus, I conclude the first *Almanza* factor does not indicate actual harm. *See id.* (erroneous instruction at punishment did not result in reasonable likelihood of jury being so misled or applying instruction in way that prevented it from considering issue).

2. *Argument of counsel*

The record of closing argument shows that neither parties' counsel construed the charge as precluding consideration of appellant's voluntary intoxication evidence. Appellant's counsel argued without objection that the intoxication evidence, and Dr. Rustin's testimony in particular, was relevant both to mitigation of punishment and whether the jury could find that appellant committed the alleged extraneous crimes and bad acts. Appellant's argument expressly distinguished between voluntary intoxication as a defense to a crime and voluntary intoxication as mitigation.

Additionally, the State did not argue that the jury was *precluded* from considering the intoxication evidence; it argued that the jury should not *believe* it. Those are different contentions entirely. The State argued expressly that Dr. Rustin's testimony was not credible for several different reasons. The State never told the jury it could not consider Dr. Rustin's testimony nor did the State object to Dr. Rustin's testimony. Like appellant, the State acknowledged that Dr. Rustin was called for mitigation purposes. On appeal, appellant does not complain that the court excluded any evidence material to his voluntary intoxication theory, so the jury had before it all the defensive intoxication evidence appellant sought to introduce. The State's argument tied appellant's drug usage to the extraneous crimes and bad acts evidence. Lastly, the State argued that appellant's voluntary intoxication evidence was not credible because appellant committed crimes even when not taking Xanax.

I conclude this factor does not indicate a reasonable likelihood that the challenged instruction would have misled a jury into believing that it was prohibited from considering appellant's voluntary intoxication evidence. *See Arline*, 721 S.W.2d at 353 (finding charge error harmless; charge was not misleading in light of closing arguments).

3. *The state of the evidence, including the contested issues and weight of probative evidence*

In assessing the extent to which the charge error "actually affected" [10] the outcome—life imprisonment—I also look to

10. *Saunders,* 817 S.W.2d at 690.

the overall evidence, including its probative weight. *Reeves*, 420 S.W.3d at 816, 820; *Wooten*, 400 S.W.3d at 606. According to appellant, absent the erroneous instruction it is "entirely possible" that the jury would not have imposed the maximum sentence available. While courts consider the sentence as part of the harm analysis, a maximum sentence does not alone establish actual harm resulting from charge error. *See White v. State*, 779 S.W.2d 809, 828 (Tex. Crim. App. 1989) (no harm from omission of "no-adverse-inference" in death penalty case); *Castaneda*, 852 S.W.2d at 296.

In my view, the overall state of the evidence does not give rise to a reasonable likelihood that the jury assessed the maximum sentence because it believed the voluntary intoxication evidence could not be considered in mitigation. It is far more likely that the jury's verdict was motivated by the overwhelming weight of the nature of the charged offense and appellant's extraneous offenses, together with the weakness of Dr. Rustin's testimony and other intoxication proof.

For example, the jury heard damning evidence not only as to the charged offense but also a litany of other extraneous crimes and bad acts committed by appellant. There was evidence that appellant participated in a murder where the victim was shot in the head while sitting in an automobile. That homicide occurred the day before appellant committed the charged offense of aggravated robbery with a deadly weapon, which unfolded with appellant brandishing a gun and approaching the victim in his car—much like the circumstances of the extraneous homicide. On multiple jail phone recordings, appellant is heard discussing how he tried to "pull the trigger" twice while committing the charged offense, only to have his gun "jam." On one recording, appellant also discussed the homicide. Notably, the only evidence the jury asked to re-hear during its punishment deliberations was one of the phone recordings. The jury heard evidence that appellant sold drugs and was "high on Xanax" a "lot of times." There was also evidence appellant committed multiple assaults against family members and others, including beating a jail inmate unconscious merely to obtain a private cell. *Cf. White*, 779 S.W.2d at 828 (as part of its determination that appellant did not suffer some harm from punishment charge error, court noted that the State introduced evidence of appellant's commission of "remarkably similar murder" just days before the charged offense, as well as evidence of other crimes and his general reputation for violence).

Appellant called Dr. Rustin as a witness during the punishment phase. Dr. Rustin testified, without objection, that Xanax is a sedative that reduces inhibitions and one's fear of punishment. Dr. Rustin said that appellant began using Xanax at a "young" age and increased his usage, according to appellant, up to eight two-milligram pills in a day. Appellant acquired the drug "off the street" or via the internet without a prescription. On cross-examination, Dr. Rustin acknowledged that his testimony was based solely on a single interview with appellant, who self-reported his own usage. Dr. Rustin reviewed no medical records regarding appellant's drug use, nor did appellant offer any medical records into evidence. Appellant successfully completed a drug treatment program in 2009 but continued committing offenses nonetheless. Dr. Rustin acknowledged that appellant committed violent offenses in jail, while not under the influence of Xanax. The jury also heard a jail phone recording in which one individual suggested to appellant that he should assert drug usage as a defense.

Relative to other evidence, the substance of Dr. Rustin's testimony was weak and undermined substantially on cross-examination. In contrast, the State presented overwhelming evidence of extraneous crimes and bad acts.[11] Even considering the totality of appellant's voluntary intoxication evidence heard by the jury, it is not reasonably likely the jury afforded it more than nominal weight, if any, based on this record. Considering the state of proof, the jury was within its right to assess the maximum sentence for an offense of this nature.[12] Accordingly, while I do not discount the gravity of the sentence, I cannot conclude that the jury was reasonably likely to assess less than the maximum punishment allowed but for the erroneous voluntary intoxication instruction.[13]

4. *Other relevant factors.*

Lastly, I consider any other relevant information revealed by the trial record as a whole. *See Reeves*, 420 S.W.3d at 816; *Wooten*, 400 S.W.3d at 606.

Appellant argues the instruction harmed him because it went to his sole defense for mitigation of punishment. *See Reeves*, 420

S.W.3d at 820-21. The intoxication evidence is undermined only if the jury believed it could not consider it as a justification for assessing punishment. But there is no indication from the record that the jury so believed. The trial court informed the jury it was free to consider all of the evidence admitted, and both parties' counsel emphasized the nature and quality of the voluntary intoxication evidence without ever telling the jury it was precluded from considering the intoxication evidence. There was no jury note expressing confusion on that point. Appellant's counsel argued that the jury should give lesser punishment based on Dr. Rustin's testimony. True, the Xanax evidence was appellant's principal defense on punishment, but it was not the central issue permeating the collective entirety of punishment evidence. While the erroneous instruction may have pertained to appellant's sole mitigation defense, the record does not indicate a reasonable likelihood that the instruction actually affected the jury's consideration of that defense.

The dissent criticizes the trial court's stated justification for including the sec-

11. The trial court properly instructed the jury that it could consider evidence of extraneous crimes or bad acts in assessing punishment only if the extraneous crime or bad act was shown by the State beyond a reasonable doubt to have been committed by the appellant or was one for which the appellant could be held criminally responsible. Tex. Code Crim. Proc. art. 37.07, § 3(a)(1); *see also Huizar v. State*, 12 S.W.3d 479, 483-84 (Tex. Crim. App. 2000).

12. *Cf. Hopkins v. State*, 487 S.W.3d 583, 584 (Tex. Crim. App. 2016); *Bazan v. State*, 403 S.W.3d 8, 10 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd); *Parker v. State*, 51 S.W.3d 719, 721 (Tex. App.—Texarkana 2001, no pet.); *Phillips v. State*, No. 07-15-00357-CR, 2016 WL 3696732, at *1 (Tex. App.—Amarillo July 11, 2016, no pet.) (mem. op., not designated for publication); *Jackson v. State*, No. 05-14-00985-CR, 2015 WL 3899573, at *1

(Tex. App.—Dallas June 25, 2015, pet. ref'd) (mem. op., not designated for publication); *Patterson v. State*, No. 05-13-00450-CR, 2015 WL 2400809, at *1 (Tex. App.—Dallas May 19, 2015, pet. ref'd) (not designated for publication); *Carter v. State*, No. 14-14-00061-CR, 2014 WL 5780691, at *1 (Tex. App.—Houston [14th Dist.] Jan. 14, 2015, pet. ref'd) (mem. op., not designated for publication); *Gilstrap v. State*, No. 14-01-011867-CR, 2002 WL 31718482, at *1 (Tex. App.—Houston [14th Dist.] Dec. 5, 2002, no pet.) (mem. op., not designated for publication).

13. The dissent cites *Erazo v. State*, 167 S.W.3d 889, 891 (Tex. App.—Houston [14th Dist.] 2005, no pet.), as analogous support for finding harmful error when a jury assesses life imprisonment. But *Erazo* involved the erroneous admission of evidence, not jury charge error, and applied a different test than the one at issue here. *See id.* at 890.

tion 8.04(a) instruction in the punishment phase charge. Assuming the dissent is correct, however, the trial court's rationale could not have caused actual harm because the jury did not hear it. The court's motivation for including the voluntary intoxication instruction, right or wrong, could not have actually affected the jury's interpretation of the instruction.

Finally, in my view, *Kresse*, 2010 WL 1633383, at *2, also cited by the dissent, does not suggest a contrary outcome. *Kresse* held the inclusion of a section 8.04(a) voluntary intoxication instruction in the punishment phase charge was harmful. There, Kresse did not want the jury to consider ample intoxication evidence against him in assessing punishment for murder. *Id.* Kresse argued, and the Fort Worth court of appeals agreed, that placing the instruction in the punishment charge drew attention to his history of excessive drinking, which the prosecutor emphasized repeatedly in opening and closing. *Id.* The harm issue in the present case is much different. Here, the question is whether the voluntary intoxication instruction was likely to mislead the jury into thinking it could not consider appellant's intoxication evidence. For the reasons expressed, I believe it was not.

## Conclusion

For these reasons, I would hold that erroneously including a section 8.04(a) voluntary intoxication instruction in the punishment phase jury charge did not cause actual harm under the present record. Accordingly, I respectfully concur with the judgment of affirmance.

(Frost, C.J., plurality)

(Christopher, J., dissenting)

Tracy Christopher, Justice, dissenting

I agree with Justice Jewell that the trial court erred by submitting its punishment-phase charge with a guilt-phase instruction. I write separately, however, because I cannot join Justice Jewell's opinion in full. Unlike Justice Jewell, I cannot agree that there are situations in which guilt-phase instructions may be given in punishment-phase charges. I would apply a bright-line rule that guilt-phase instructions should never appear in punishment-phase charges.

I also cannot agree with Justice Jewell that the trial court's charge error was harmless. I would conclude that the error resulted in some harm, and I would reverse the trial court's judgment and remand for a new hearing on punishment only. Because the court does not, I respectfully dissent.

## I. The trial court erred by giving the challenged instruction.

Over defense counsel's objection, the trial court submitted the following instruction in its punishment charge to the jury:

Voluntary intoxication does not constitute a defense to the commission of a crime. "Intoxication" means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

The first sentence of this instruction tracks the language of Section 8.04(a) of the Texas Penal Code, and the second sentence tracks the language of Section 8.04(d). Defense counsel argued that the entire instruction was inappropriate:

We object to the submission of [the voluntary] intoxication charge that's been submitted by the prosecution and the Court has included. We take the position it's not appropriate in the punishment stage of the trial. It might be appropri-

ate in guilt/innocence, but we never took the position that [appellant] was somehow incapacitated in such a way that he didn't reach the mens rea level to commit the crime.

Counsel was correct. In *Taylor v. State*, the Court of Criminal Appeals held that "Subsection (a) of section 8.04 is directed to the guilt/innocence phase of trial." *See Taylor v. State*, 885 S.W.2d 154, 156 (Tex. Crim. App. 1994). The Court also determined that Section 8.04(a) was not a "mitigation provision." *Id.* at 156 n.4. Although the Court did not speak directly to the exact situation presented here, the effect of *Taylor* should be clear enough: Because the punishment phase is about sentencing and not guilt or innocence, an instruction under Section 8.04(a) does not belong in the punishment charge.

The State argues that the challenged instruction was appropriate because the instruction applied to evidence of an extraneous offense, which was introduced for the first time during appellant's trial on punishment. That explanation is erroneous for three reasons.

First, the State requested the challenged instruction under a belief that the instruction would apply to the charged offense (aggravated robbery), not the extraneous offense (capital murder).[1]

Second, there is no language in the instruction expressly limiting its application to just the extraneous offense.

Third, even if there were limiting language, the instruction would be irrelevant because the instruction is only useful when deciding the guilt of the defendant, a question that is obviously not decided during the punishment phase of trial, even when extraneous offenses are at play.

The Court of Criminal Appeals emphasized this final point in *Haley v. State*, 173 S.W.3d 510 (Tex. Crim. App. 2005). In that case, the defendant complained about evidence of an extraneous offense, which had been admitted during the punishment phase. *Id.* at 511–12. The defendant argued that the evidence should have been excluded because it did not establish that she was criminally responsible as a party to the extraneous offense. *Id.* at 512. The Court rejected that argument, explaining that the jury did not need to determine the defendant's criminal responsibility with respect to the extraneous offense: "It is irrelevant whether the conduct the offering party is attempting to prove is, or can be characterized, as an offense under the Texas Penal Code." *Id.* at 514–15. "Unlike the guilt-innocence phase, the question at punishment is not whether the defendant has committed a crime, but instead what sentence should be assessed." *Id.* at 515. "Whereas the guilt-innocence stage requires the jury to find the defendant guilty beyond a reasonable doubt of each element of the offense, the punishment phase requires the jury only find that these prior [extraneous] acts are attributable to the defendant beyond a reasonable doubt." *Id.*

We recently applied *Haley* in a case of our own. In *Gomez v. State*, the issue was whether the trial court had erred by denying a request for a self-defense instruction in the punishment charge. *See Gomez v. State*, 380 S.W.3d 830, 837–38 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). The defendant believed that he was entitled to

---

1. During the charge conference, the State explained its request as follows: "We simply ask that this instruction be included so that the jury doesn't recognize or excuse the defendant's behavior on the aggravated robbery. I do recognize that Dr. Rustin can easily testify to the idea that this is mitigation, that [appellant is] on these substances at some point. But this saves us from any concerns over the aggravated robbery in excusing his behavior by having this charge."

the instruction because it applied to evidence of two extraneous killings. *Id.* We disagreed: "To prove an extraneous offense at punishment, the State is only required to prove beyond a reasonable doubt a defendant's involvement in the bad act: a finding of guilt for a crime is not required." *Id.* at 839. If, under *Gomez*, the defendant is not entitled to a guilt-phase instruction during the punishment-phase of trial, then neither is the State.

We see echoes of *Haley* in other contexts too. For example, we do not review the sufficiency of the evidence supporting an extraneous offense. *See Palomo v. State*, 352 S.W.3d 87, 94 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). The reason is simple: "there is no actual finding by the jury that the defendant committed the extraneous offense." *Id.* at 95; *see also Bible v. State*, 162 S.W.3d 234, 246–47 (Tex. Crim. App. 2005) (no need to consider whether there is sufficient proof to corroborate evidence of an extraneous offense from a confession); *McClure v. State*, 269 S.W.3d 114, 118 (Tex. App.—Texarkana 2008, no pet.) (no need to consider whether there is sufficient proof to corroborate evidence of an extraneous offense from an accomplice witness).

Similarly, we do not give the jury a special verdict form, listing the elements of an unadjudicated offense. *See Matchett v. State*, 941 S.W.2d 922, 937 (Tex. Crim. App. 1996). Nor do we say that jeopardy attaches whenever evidence of an unadjudicated offense is admitted during a punishment hearing. *See Ex parte Broxton*, 888 S.W.2d 23, 28 (Tex. Crim. App. 1994).

Justice Jewell would hold that tailoring language may justify the submission of a guilt-phase instruction in a punishment-phase charge if, for instance, the tailoring language prevents confusion by limiting the instruction to particular evidence or a defense. But the best way to prevent confusion is simply to omit the guilt-phase instruction in the first place because it does not belong. The jury does not (and cannot) make a finding of guilt during the punishment of a trial, and so there is no reason for the trial court to include in its punishment charge an instruction that can only be applied properly when deciding the guilt of the defendant.

## II. The trial court's error resulted in some harm.

When error in the charge was the subject of a timely objection, as it was here, the judgment must be reversed if the error was "calculated to injure the rights of [the] defendant." *See* Tex. Code Crim. Proc. art. 36.19. This means "no more than that there must be *some* harm to the accused from the error." *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). "In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless." *Id.*

Harm is assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.* I examine each of these factors in turn.

*The Entire Jury Charge.* There are eleven pages worth of instructions in the trial court's punishment charge. The first five pages address the punishment range, the availability of community supervision, and the law regarding credits for good time and parole. All of these subjects flow necessarily from the conviction for the charged offense, not the admission of the extraneous-offense evidence.

Then, on the sixth page, the challenged instruction appears. The entire page is re-

served for the instruction, and there is no text signaling that the instruction is limited to just the extraneous offense.

After the challenged instruction, there is an instruction saying that appellant's mere presence at the scene of the offense is insufficient to conclude that he committed an offense beyond a reasonable doubt. Although this is also a guilt-phase instruction, appellant does not complain about it.

The remaining pages contain boilerplate instructions about extraneous offenses, the defendant's right to not testify, the burden of proof, and the requirement of a unanimous verdict.

Justice Jewell argues that the jury would have likely construed the challenged instruction as pertaining to just the extraneous offense, but I would say that this construction is far from likely based on the placement of the instruction within the charge. The challenged instruction is featured on its own page, appearing after the discussion of the charged offense, before the discussion of the extraneous offenses, and without any sort of language limiting its application to one or the other. The possibility for confusion was significant. The jury could have just as easily concluded that the challenged instruction applied to the offense for which appellant was being sentenced. Cf. Reeves v. State, 420 S.W.3d 812, 819 (Tex. Crim. App. 2013) (noting that "the physical location of the [erroneous instruction] magnified its harm").

Justice Jewell also argues that any confusion created by the challenged instruction was cured by a later instruction that the jury should consider all of the evidence. But the problem is not what evidence the jury was allowed to consider; the problem was *how* the jury was instructed to consider the evidence. The challenged instruction singled out the evidence of appellant's addiction and then told the jury

that his addiction was not a "defense" if appellant voluntarily intoxicated himself. That language was harmful because it effectively instructed the jury that evidence of addiction should not be treated as mitigating.

The plurality opinion by Chief Justice Frost acknowledges that the challenged instruction may have been "unnecessary," but would still hold that the challenged instruction was not erroneous because it was an accurate statement of law. This also misses the point. An "unnecessary" instruction can amount to an improper comment on the weight of the evidence. *See Brown v. State*, 122 S.W.3d 794, 801 (Tex. Crim. App. 2003). And a charge can be erroneous even if it perfectly tracks the language of a statute. *E.g., Navarro v. State*, 469 S.W.3d 687, 698–700 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

Reviewing courts should not limit their focus to just the words that appear in an instruction. They must also determine the likely impact of those words. And here, the problem with the challenged instruction is that it unfairly singled out the evidence offered by appellant in mitigation. *See Bartlett v. State*, 270 S.W.3d 147, 152 (Tex. Crim. App. 2008) ("Even a seemingly neutral instruction may constitute an impermissible comment on the weight of the evidence because such an instruction singles out that particular piece of evidence for special attention."); *Santos v. State*, 961 S.W.2d 304, 306 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) ("Even though the instruction constitutes an accurate statement of the law, it magnifies a particular fact giving unfair emphasis to that fact.").

*The Evidence.* Appellant called a single defense witness during punishment, Dr. Terry Rustin, who testified about addictions to Xanax. Dr. Rustin explained that

Xanax is a type of sedative that can reduce personal inhibitions and encourage people to act in ways they might otherwise not for fear of being punished.

Dr. Rustin testified that appellant began taking Xanax without a prescription when he was fourteen years old, and that he regularly exceeded the recommended dosage as he grew older and more addicted to the drug. There was evidence that appellant was under the influence of Xanax when he committed the charged offense and the extraneous offense.

Defense counsel did not offer Dr. Rustin's testimony in an effort to excuse appellant's behavior (i.e., to eliminate appellant's criminal responsibility) or to show that appellant was temporarily insane because he had been under the influence of Xanax. Rather, counsel offered this testimony merely to provide context and explanation for appellant's behavior.

Evidence of drug addiction can be relevant in the jury's assessment of punishment. *See Ex parte Smith*, 309 S.W.3d 53, 63 (Tex. Crim. App. 2010) ("His evidence of drug addiction, poverty, and a crime-ridden neighborhood was at the heart of his mitigation theory."). Appellant certainly needed some evidence in mitigation because the State's evidence portrayed him in a deeply negative light.

The State produced evidence that appellant killed a man for his wallet; that he assaulted his own friend because he perceived that his friend was encroaching on his girlfriend; and that he beat an inmate, to the point of rendering the inmate unconscious, just so that he could get a private jail cell. These are just the extraneous bad acts. When the charged offense is also considered, the State's evidence depicted appellant as violent, depraved, and wholly unsympathetic.

The only evidence offered to counter this depiction was the evidence of appellant's problem with addiction. But the trial court's erroneous charge negated the effect of that evidence by confusing the issue on punishment—essentially, by instructing the jury that the addiction was not a "defense" because appellant voluntarily intoxicated himself. The erroneous charge undermined appellant's sole defensive theory in punishment. *See Reeves*, 420 S.W.3d at 820–21 ("It is also relevant to the harm analysis that the erroneous instruction . . . undermined appellant's sole defense.").

***The Arguments of Counsel.*** Defense counsel tried to contain the effect of the erroneous instruction. During closing arguments, counsel repeatedly argued that appellant's Xanax addiction was not an "excuse" for his behavior. Counsel also encouraged the jury to consider appellant's addiction as "mitigation."

Perhaps unsurprisingly, the prosecutor treated the erroneous instruction as a guilt-phase instruction, emphasizing the voluntary component of appellant's addiction:

> There is no—I repeat—no mitigation for his activity. He's the one that chose to put that Xanax in his mouth. He didn't have a prescription for it. He chose to take it. He now must face the consequences of those actions.

Because the prosecutor opted to close last, this was the final impression imparted to the jury—a view based on an erroneous instruction. That view increased the likelihood that the jury applied the charge in a manner that foreclosed the consideration of appellant's addiction as mitigating.

***Other Relevant Information.*** During the charge conference, the trial court gave a legally flawed justification for the erroneous instruction:

I'm going to allow y'all to argue the mitigation aspect of this, but I'm going to leave this charge in there, because I don't want the jury, as the prosecutor just stated, to become confused to think that because he was on some drug, and it might have messed his mind up, that the punishment should be diminished to the point to where there could be no punishment. So I'm going to leave it in.

Contrary to the trial court's fears, the jury could not return a verdict of "no punishment" because that sentence would be outside the statutory range, rendering the judgment void. *See Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003) ("A sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal."); *see also* Tex. Penal Code § 12.32(a) (the minimum sentence for a first-degree felony is five years' imprisonment).

The trial court's comment is also startling. The court essentially explained that it was giving the erroneous instruction because it was concerned that the jury might look at the evidence of addiction, regard that evidence as having reduced appellant's blameworthiness, and then assess a lenient sentence. Of course, the very purpose of mitigating evidence is to persuade the jury in that exact manner—to show that the defendant is deserving of leniency. It is hard to imagine an error more clearly "calculated to injure the rights of [the] defendant" than an instruction that was explicitly designed to diminish the mitigating potential of the defendant's own properly admitted evidence. *See* Tex. Code Crim. Proc. art. 36.19.

Considering that appellant was sentenced to life imprisonment, the maximum sentence permitted by law, I cannot say that the trial court's error was harmless.[2] *Cf. Erazo v. State*, 167 S.W.3d 889, 891 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding that the erroneous admission of evidence during the punishment phase of trial was not harmless where the defendant was assessed the maximum punishment); *see also Kresse v. State*, No. 2-09-21-CR, 2010 WL 1633383, at *2 (Tex. App.—Fort Worth Apr. 22, 2010, no pet.) (mem. op., not designated for publication) (holding that the trial court had reversibly erred by giving a voluntary-intoxication instruction during the punishment phase of trial). I would reverse the trial court's judgment and remand for a new hearing on punishment only.[3]

I respectfully dissent.

---

**2.** For his proposition that charge error may be harmless even if the defendant receives the maximum sentence permitted by law, Justice Jewell relies on *White v. State*, 779 S.W.2d 809 (Tex. Crim. App. 1989) and *Castaneda v. State*, 852 S.W.2d 291 (Tex. App.—San Antonio 1993, no pet.). Both of those cases involved the same type of charge error: the omission of a "no-adverse-inference" instruction. That charge error simply does not compare to the facts of this case. The omission of an instruction cannot amount to a comment on the weight of the evidence, which was the effect of the challenged instruction that was affirmatively submitted here. Also, the "no-adverse-inference" rule is routinely discussed during voir dire, which means that the juries in those cases were likely familiar with it already and that the omission of the instruction did not influence those sentencing decisions. The same cannot be said of the challenged instruction in this case, which was not discussed during voir dire and which undermined the only evidence that appellant offered in mitigation.

**3.** If I were writing for the court, I would not reach appellant's third issue because, under my analysis, appellant's second issue would be dispositive. But if I did have occasion to

address appellant's third issue, my approach would differ slightly from this court's main opinion. In his third issue, appellant complains about the trial court's ruling on his objection to an improper closing argument. Appellant contends that the argument was improper because the prosecutor commented directly on appellant's in-court remorselessness. Because appellant did not actually testify in court, the prosecutor's comment infringed on appellant's right not to testify. Nevertheless, the trial court overruled appellant's objection, and this court's main opinion treats that ruling as "presumed error." That characterization does not go far enough. The prosecutor's closing argument was categorically improper and the trial court's ruling was actual error. *See Snowden v. State*, 353 S.W.3d 815, 823 n.34 (Tex. Crim. App. 2011). In this court, not even the State pretends otherwise. I would characterize the trial court's ruling as "error," not "presumed error." We cannot expect the administration of our criminal justice system to improve if we are unwilling to acknowledge true errors for what they are.