

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0715-17

**JOSEPH ANTHONY SMITH, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FOURTEENTH COURT OF APPEALS
## HARRIS COUNTY

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., and HERVEY, RICHARDSON, YEARY, NEWELL, and SLAUGHTER, JJ., joined. WALKER, J., concurred. KEEL, J., dissented.

## O P I N I O N

In the punishment phase of his aggravated-robbery trial, Joseph Smith presented evidence that he suffers from a severe drug addiction. The State asked for, and received, an instruction stating that "[v]oluntary intoxication does not constitute a defense to the

commission of a crime."[1] Smith argues that such an instruction is never appropriate in the punishment phase of trial. We hold that although it is within a trial judge's discretion to give a voluntary-intoxication instruction in the punishment phase, its application must be expressly limited to extraneous offenses. We reverse the court of appeals' judgment.

## I. BACKGROUND

A jury found Smith guilty of aggravated robbery, a first-degree felony carrying a punishment range of 5 to 99 years or life in prison. In the punishment phase, the State presented evidence that, among other things, Smith had committed an extraneous capital murder. Smith's only punishment-phase witness was Dr. Terry Rustin, a medical doctor board certified in "internal medicine and . . . addiction medicine." Rustin testified that he had met with and interviewed Smith in the county jail during the pendency of Smith's case. During this interview, Smith told Rustin that he had abused Xanax by taking several tablets a day, without any prescription, since he was fourteen years old.

Rustin explained that one of the primary effects of Xanax is to reduce stressfulness and "worry[,] so that people will do things that they wouldn't ordinarily do . . . . This is called reduction of inhibitions. Inhibitions are the hesitancy that we feel about doing something we know is not right." Rustin testified that, because of this, the drug can "promote risky behavior," "increase impulsive behavior," and "result in aggressive or

---

[1] *See* TEX. PENAL CODE § 8.04(a). Unless otherwise indicated, all references to "Sections" refer to the Texas Penal Code.

criminal behavior." However, Rustin clarified that using Xanax "does not excuse [or condone] behavior, and it's not an excuse under the law."

Once both sides rested and closed, the trial judge prepared his punishment-phase jury instructions. Off the record, the State requested, and the trial judge agreed to give, an instruction stating that "[v]oluntary intoxication does not constitute a defense to the commission of a crime." On the record, Smith's trial counsel objected, arguing that while such an instruction might have been "appropriate in guilt/innocence," in the punishment phase, it essentially told the jury to "just ignore" Dr. Rustin's testimony. The trial judge overruled the objection, but told counsel he would nevertheless be allowed to "argue the mitigation aspect" of Smith's substance abuse. The jury ultimately sentenced Smith to life in prison.

On appeal, Smith raised several claims, including a challenge to the inclusion of a punishment-phase voluntary-intoxication instruction under Penal Code Section 8.04(a). The court of appeals rejected this claim by plurality decision and went on to affirm Smith's conviction. Chief Justice Frost, writing the lead opinion for the plurality, concluded that including the voluntary-intoxication instruction was not erroneous.[2] Justice Jewell, concurring, wrote that including the instruction was erroneous, but harmless.[3] And Justice

---

[2] *Smith v. State*, 522 S.W.3d 628, 632–34 (Tex. App.—Houston [14th Dist.] 2017) (plurality op.).

[3] *Id.* at 640–47 (Jewell, J., concurring).

Christopher, dissenting, thought that the charge was both erroneous and harmful.[4]

In the first two grounds of his petition for discretionary review, Smith argues that including the instruction violated Article 36.14 of the Code of Criminal Procedure[5] and the Due Process Clause of the United States Constitution.[6] Because we conclude that the charge given in this case did not comply with Article 36.14, and because finding a constitutional violation would not subject the error to a heightened standard of review in any event,[7] we need not address the constitutional complaint.

## II. ANALYSIS

### A. The State is permitted to put on evidence of extraneous "crimes."

Article 37.07, Section 3(a)(1) of the Code of Criminal Procedure says that, in the punishment phase of trial, the State may offer "evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt . . . to have been committed by the defendant or for which he could be held criminally responsible[.]"[8] This language contemplates as many as

---

[4] *Id.* at 647–52 (Christopher, J., dissenting).

[5] *See* TEX. CODE CRIM. PROC. art. 36.14. Unless otherwise indicated, all references to "Articles" refer to the Texas Code of Criminal Procedure.

[6] *See* U.S. CONST. amend. XIV.

[7] *See, e.g.*, *Olivas v. State*, 202 S.W.3d 137, 145 (Tex. Crim. App. 2006) ("The appropriate standard for all errors in the jury-charge, statutory or constitutional, is that set out in *Almanza*.") (referring to *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g)).

[8] *See* TEX. CODE. CRIM. PROC. art. 37.07, § 3(a)(1).

four different possibilities: (1) the State may present evidence that the defendant personally committed an extraneous crime; (2) the State may present evidence that the defendant is "criminally responsible" for an extraneous crime committed by someone else;[9] (3) the State may present evidence that the defendant personally committed an extraneous bad act; and perhaps (4) the State may present evidence that the defendant is "criminally responsible" for an extraneous bad act committed by someone else.

In *Haley v. State*, we observed that Article 37.07 does not place crimes and bad acts on "separate path[s] towards admissibility."[10] In that spirit, we declared that the distinction between crimes and bad acts is, under Article 37.07, "irrelevant."[11] Furthermore,

> [u]nlike the guilt-innocence phase, the question at punishment is not whether the defendant has committed a crime, but instead what sentence should be assessed. Whereas the guilt-innocence stage requires the jury to find the defendant guilty beyond a reasonable doubt of each element of the offense, the punishment phase requires the jury only [to] find that these prior acts are attributable to the defendant beyond a reasonable doubt.[12]

This passage could plausibly be understood to mean that whether the defendant's extraneous conduct meets the legal definition of a criminal offense is never a relevant consideration in the punishment phase of trial. Indeed, that understanding appears to be the one adopted by

---

[9] *See* TEX. PENAL CODE ch. 7 ("Criminal Responsibility for Conduct of Another").

[10] *See Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005).

[11] *Id.* at 514.

[12] *Id.* at 515 (footnotes and citations omitted).

the dissenting opinion in the court below.[13]

But when *Haley* said that "it is irrelevant [under Article 37.07, Section 3(a)(1)] whether the conduct the offering party is attempting to prove is . . . an offense under the Texas Penal Code,"[14] it was not using the word "irrelevant" in an evidentiary or Rule-401 sense.[15] If it had been, then the lawfulness or unlawfulness of the defendant's extraneous conduct would be flatly inadmissible in the punishment phase, because it would not even meet the threshold standard of relevance. This would conflict with the Legislature's seemingly deliberate decision to make evidence of extraneous "crime[s]," and not just extraneous "bad act[s]," admissible in the punishment phase.[16] If the badness of the act were the only relevant consideration, why would the Legislature have seen fit to refer to extraneous "crime[s]" at all?

Instead, *Haley* used the word "irrelevant" in a more general, rhetorical sense—to make the point that, even if a particular act is not unlawful, and therefore not a "crime," it may still be admissible in the punishment phase as a bad act.[17] *Haley* does not say the State

---

[13] *See Smith*, 522 S.W.3d at 648 (Christopher, J., dissenting) (discussing *Haley*, 173 S.W.3d at 514–15).

[14] *See Haley*, 173 S.W.3d at 514.

[15] *See* TEX. R. EVID. 401 (defining "Relevant Evidence").

[16] *See* TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1).

[17] *See Haley*, 173 S.W.3d at 515 ("The inclusion of acts rising to the level of criminal responsibility and acts rising to the level of 'bad' in the statute's language make it clear that the act's nomenclature does not place each on a separate path towards admissibility.").

is somehow forbidden from pointing out to the jury that the defendant's extraneous conduct was, not just "bad" in a normative sense, but actually unlawful to boot.[18] After all, *Haley* clarified that the offering party need not "necessarily" prove that the extraneous act was criminal.[19] It did not say that the offering party is flatly prohibited from doing so.

Certainly, the court's charge should not suggest to the jury that, if the defendant's extraneous conduct was unlawful, it ought to be given more weight in punishment than if it were a "mere" bad act. But by the same token, so long as the trial judge deems the unlawfulness of the defendant's extraneous conduct "relevant to sentencing,"[20] the State should not be prohibited from arguing that point to the jury. That being the case, and given that Article 36.14 instructs the judge to "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case,"[21] we do not think a trial judge would err by informing the jury of the circumstances under which it could permissibly find that the defendant had previously "committed . . . [a] crime."[22]

This holding should not be misunderstood. This does not mean, for example, that

---

[18] *See also Beham v. State*, 559 S.W.3d 474, 480 (Tex. Crim. App. 2018) (proof that defendant had previously committed an extraneous criminal offense "is a basis upon which a jury could legitimately form a clearer opinion as to . . . punishment") (citations omitted).

[19] *Haley*, 173 S.W.3d at 515.

[20] TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1).

[21] *Id.* art. 36.14.

[22] *Id.* art. 37.07, § 3(a)(1).

Article 37.07 requires the trial judge to provide the jury with Penal Code definitions of the offenses the State seeks to prove in punishment. We deal with a situation in which the trial judge granted a request for a clarifying instruction, not a situation in which the trial judge denied a request.[23] So the only issue we speak to today is whether the trial judge erred by agreeing to give a Section 8.04(a) instruction on voluntary intoxication in the punishment phase. We do not decide whether he would have erred to refuse that particular request (or, for that matter, any other request).

**B. Voluntary intoxication is no defense to "the commission of crime."**

We turn now to Section 8.04(a) of the Penal Code, which says that "[v]oluntary intoxication does not constitute a defense to the commission of crime."[24] We have previously described involuntary intoxication as an "anti-defensive issue," that is, "an issue that benefits the State's position in the case but is not something the indictment require[s] the State to prove from the outset."[25] There are many other examples.[26]

---

[23] *Cf. Gray v. State*, 298 S.W.3d 644, 652 (Tex. Crim. App. 2009) (Hervey, J., concurring) (drawing a distinction between situations in which a trial judge "has no discretion *to deny*" a requested instruction and situations in which "nothing *precludes* a trial court from *submitting* an instruction") (quoting *Arevalo v. State*, 943 S.W.2d 887, 892–94 (Tex. Crim. App. 1997) (Meyers, J., dissenting)) (emphasis in original).

[24] TEX. PENAL CODE § 8.04(a).

[25] *See, e.g.*, *Ex parte Ingram*, 533 S.W.3d 887, 892 (Tex. Crim. App. 2017) (citing, as an example, TEX. PENAL CODE § 8.04(a)).

[26] *See, e.g.*, TEX. PENAL CODE §§ 8.03(a) (ignorance of law is no defense), 15.01(c) (in criminal attempt case, it is no defense that the offense was completed), 15.03(c)(2) (in criminal solicitation case, it is no defense that the person solicited was acquitted).

Penal Code Section 8.04(a) is uniquely worded. Almost every defensive and anti-defensive issue in the Penal Code begins with the phrase, "it is a defense to prosecution" or "it is no defense to prosecution," respectively.[27] Unlike these, Section 8.04(a) says that voluntary intoxication is not a defense "to the commission of crime."[28] We have never examined what, if anything, this difference in wording signifies, and we need not do so in any great depth today. Suffice it to say that, given that both Section 8.04(a) and Article 37.07 refer, somewhat conspicuously, to the "commission of crime,"[29] we think that so long as the facts support it, it is within the trial judge's discretion to give an appropriately limited instruction on voluntary intoxication in the punishment phase of trial.

This raises two practical questions: First, when will the facts "support" giving a voluntary-intoxication instruction in the punishment phase? In *Taylor v. State*, we said that "if there is evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions," an instruction tracking Section 8.04(a) is "appropriate."[30] So, in the punishment phase, if there is evidence that might lead the jury to

---

[27] *See supra* note 26; TEX. PENAL CODE § 2.03(a) ("A defense to prosecution for an offense in this code is so labeled by the phrase: 'It is a defense to prosecution . . . .'").

[28] TEX. PENAL CODE § 8.04(a).

[29] *Compare* TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1) (the State may offer "evidence of an extraneous crime . . . shown beyond a reasonable doubt by evidence to have been committed by the defendant"), *with* TEX. PENAL CODE § 8.04(a) ("Voluntary intoxication does not constitute a defense to the commission of crime.").

[30] *Taylor v. State*, 885 S.W.2d 154, 158 (Tex. Crim. App. 1994).

conclude that the defendant's intoxication somehow turned his otherwise-unlawful bad acts into lawful ones, a voluntary-intoxication instruction is appropriate. By "appropriate," we mean only that in the circumstances just described, the trial judge has discretion to issue such an instruction. We do not decide today whether Article 37.07 requires him to do so.

*Taylor* did say that "Subsection (a) of section 8.04 is directed to the guilt/innocence phase of trial (per use of the word 'defense')[.]"[31] But it would be more consistent with the language of Section 8.04(a) to say that that provision is directed to "the commission of crime"[32]—that is, whether or not a crime was committed. Most of the time, when that issue is litigated, it is litigated in the guilt/innocence phase of trial.[33] But Article 37.07 contemplates that, so long as the trial judge deems that issue "relevant to sentencing,"[34] it may occasionally be litigated in the punishment phase, as well.

The second practical question is: How should the instruction read? May the trial judge simply track the statutory language of Section 8.04(a), or is he required to place some express limits upon the instruction? One danger we perceive is that, if the instruction is not limited in any way, the jury might think that it applies, not just to the extraneous conduct presented in the punishment phase, but to the indicted conduct as well. As we have already

---

[31] *Id.* at 156.

[32] *See* TEX. PENAL CODE § 8.04(a).

[33] *See Taylor*, 885 S.W.2d at 156.

[34] *See* TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1).

demonstrated, the only permissible use of an instruction under Section 8.04(a) is to prevent the jury from treating otherwise-unlawful conduct as lawful on account of the defendant's intoxication. But by the time the trial has reached the punishment phase, the jury has already declared, *via* its guilty verdict, that the indicted conduct was unlawful. So, insofar as the indicted conduct is concerned, the jury could only understand a Section 8.04(a) instruction to mean that, even if the defendant was intoxicated during the commission of the offense, his intoxication "is no defense" in the sense that it has no mitigating value.[35]

So understood, such an instruction would serve no legitimate purpose—it could only function as a comment upon the weight of the punishment-phase evidence.[36] It would also be an inaccurate statement of law.[37] It seems to us that, so long as the trial judge deems evidence of the defendant's intoxication "relevant to sentencing," a jury might rationally perceive that evidence as mitigating, and we are aware of no law that would prohibit the jury from treating it as such. Section 8.04(b) says that "temporary insanity caused by intoxication may be introduced . . . in mitigation of the penalty," but that does not mean that other effects

---

[35] *Cf. Taylor*, 885 S.W.2d at 156 n.4.

[36] *Contra* TEX. CODE CRIM. PROC. art. 36.14 (directing the trial judge to "deliver to the jury . . . a written charge . . . not expressing any opinion as to the weight of the evidence").

[37] *See id.* (the written charge should "distinctly [set] forth the law applicable to the case"); *cf. also Vega v. State*, 394 S.W.3d 514, 515–16 ("[W]hen a trial judge instructs on a defensive issue, he must do so correctly.").

of intoxication are irrelevant to sentencing or can be given no mitigating effect.[38]

To avoid this danger, the trial judge must expressly limit any punishment-phase instruction under Section 8.04(a) so that it applies only to the jury's consideration of extraneous-conduct evidence. Such an instruction does not apply to, and cannot be considered in connection with, the indicted conduct. It may validly be applied to extraneous conduct only because, in the punishment phase of trial, the lawfulness or unlawfulness of that conduct has not yet been finally resolved.

Given the narrow application of such an instruction and the inherent risk of either confusing the jury or appearing to comment on the weight of punishment-phase evidence, we think that in most cases the wiser course will be for the trial judge to avoid this kind of instruction altogether. But that does not mean that the law strictly forbids it. On the contrary, we think that the law permits a trial judge to issue a punishment-phase voluntary-intoxication instruction under Penal Code Section 8.04(a)—as long as he is careful to limit any such instruction in the manner just described.

## C. The instruction in this case was not properly limited.

The punishment-phase voluntary-intoxication instruction given in this case was not limited to extraneous conduct in express terms. Nor do we think such a limitation could be fairly implied by the structure of the punishment-phase charge. The voluntary-intoxication

---

[38] *See Taylor*, 885 S.W.2d at 157 ("Both subsections (a) and (b) set forth rules of law that could be implicated by circumstances other than those set forth in subsection (c)[.]").

instruction given in this case came immediately after the court's charges on community supervision and parole law and before the court's general charge on extraneous offenses. Because of this, and because the voluntary-intoxication instruction did not contain any express limiting language, the charge permitted the jury to apply the instruction to the indicted conduct as well as the extraneous conduct. For the reasons explained above, this was error.

Chief Justice Frost, writing the lead plurality opinion in the court below, found that the voluntary-intoxication charge, if perhaps "out-of-place," was not erroneous.[39] Because of this, there was no need for her to conduct a harm analysis. The remaining two justices on the panel split on the issue of whether the erroneous instruction was harmful, each of them applying the "some harm" standard associated with claims of jury-charge error that were preserved in the trial court.[40] In any event, there is, as yet, no majority "decision" from the court of appeals regarding the harmfulness of the error in this case.[41]

Furthermore, there may be an issue of error preservation.[42] Smith did not ask that any

---

[39] *See Smith*, 522 S.W.3d at 634 (Frost, C.J., writing for the plurality).

[40] *See Almanza*, 686 S.W.2d at 171 (op. on reh'g).

[41] *See, e.g.*, *Stringer v. State*, 241 S.W.3d 52, 59 (Tex. Crim. App. 2007) ("In our discretionary review capacity we review 'decisions' of the courts of appeals.") (citations omitted).

[42] *See, e.g.*, *Darcy v. State*, 488 S.W.3d 325, 327–28 (Tex. Crim. App. 2016) ("Preservation of error is a systemic requirement. [This] means that a first-tier appellate court may not reverse a judgment of conviction without first addressing any issue of error preservation.") (citations and emphasis omitted).

voluntary-intoxication instruction be limited in any way; his argument to the trial judge was that such an instruction was "not appropriate in the punishment stage of trial." For the reasons explained above, this objection could be seen as an overreach; voluntary-intoxication instructions may sometimes be appropriate in the punishment stage of trial, but only if they are properly limited. So it is at least arguable that the trial judge would have been within his rights simply to overrule Smith's trial objection, because Smith was asking for something that the law does not entitle him to. If Smith did not preserve error, it may be appropriate for the court of appeals to apply the less-forgiving "egregious harm" standard.[43] Because this case must be remanded in any event for the court of appeals to decide whether the error described in this opinion was harmful, the court of appeals must decide this preservation issue before it may reverse Smith's sentence.[44]

### III. CONCLUSION

Having defined with greater particularity the way in which we think the charge was erroneous, we remand this case to the court of appeals to decide whether that error was preserved, which of *Almanza*'s harm analyses ought to apply, and ultimately whether the error was harmful. Smith's remaining issues are dismissed as improvidently granted.

Delivered: July 3, 2019

Publish

---

[43] *See Almanza*, 686 S.W.2d at 171 (op. on reh'g).

[44] *Cf. supra* note 42.