**Affirmed in Part, Reversed and Remanded in Part, and Opinion on Remand filed November 17, 2020.**



In The

# Fourteenth Court of Appeals

### NO. 14-15-00502-CR

## JOSEPH ANTHONY SMITH, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause No. 1336966**

## O P I N I O N   O N   R E M A N D

On remand from the Court of Criminal Appeals, we must determine whether appellant Joseph Anthony Smith preserved error in the trial court as to the punishment-phase-jury-charge error the high court identified in its opinion, and we must conduct a harm analysis. We conclude that appellant preserved error and that under the Court of Criminal Appeals's opinion, the error met *Almanza*'s "some

harm" standard.[1]   We affirm appellant's conviction, reverse the trial court's judgment as to punishment, and remand for a new punishment hearing.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The complainant was backing his car out of the driveway heading towards the street at around 5:00 a.m. when a man approached him wielding a gun.  The man tapped the driver's-side window with the gun.  Believing he was being robbed, the complainant handed the man his wallet and keys, saying, "Please take my wallet and keys.  Please don't hurt me."  The assailant asked the complainant if anyone else was home, and although both of the complainant's parents were at home, the complainant replied that no one was at home because he did not want the assailant to think anyone was in the house.  The assailant told the complainant to get back in the car, but the complainant refused.  At that moment, a car drove down the street, distracting both the assailant and the complainant enough that the assailant moved the gun away from the complainant's face.  The complainant grabbed the assailant's hand and began screaming for help while fighting with him for the gun.  The two struggled, with the assailant attempting to muffle the complainant's screams.

The car driving down the street did not stop to help the complainant, but the complainant's neighbor heard his screams and came outside with a firearm.  The neighbor ordered the assailant to drop the gun.  The assailant released the gun and ran away.

The neighbor pursued the assailant, telling him to get on the ground.  The assailant did not comply, but a second neighbor came out of his home with a weapon and pursued the assailant, who eventually stopped running.  The second neighbor brought the assailant back down the street and forced him to wait until police arrived.

---

[1] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

The complainant brought the assailant's gun into the complainant's house and eventually turned the gun over to responding police officers.

Appellant was charged with aggravated assault with a deadly weapon. He pleaded "not guilty."

*Guilt/Innocence Phase*

During their testimony in the guilt/innocence phase, the complainant and the first neighbor described what happened. The trial court admitted into evidence recordings of several phone calls appellant placed while he was incarcerated. In these phone calls, appellant repeatedly discussed the incident, characterizing it as a robbery, and explaining that his motivation for the act was his lack of money.

Appellant asked the trial court to charge the jury on the lesser-included offense of aggravated assault. The trial court denied appellant's request. The jury found appellant guilty as charged.

*Punishment Phase*

During the punishment phase of the trial, the State presented evidence of other bad acts the State alleged appellant had committed, including an assault and a capital murder. Appellant introduced evidence that he had used the drug Xanax from his youth up to the point of appellant's incarceration. Appellant also presented an expert witness who testified about the effects of Xanax use. In the punishment-phase jury charge, the trial court instructed the jury as follows:

> You may consider evidence of an extraneous crime or bad act in assessing punishment even if the defendant has not yet been charged with or finally convicted of the crime or act. However, you may consider such evidence only if the extraneous crime or bad act has been shown by the State beyond a reasonable doubt to have been committed by the defendant or is one for which the defendant could be held criminally responsible.

3

The prosecution does not have to prove an extraneous crime or bad act beyond all possible doubt. The prosecution's proof must exclude all reasonable doubt concerning the extraneous crime or bad act.

Therefore, if you find and believe beyond a reasonable doubt that the defendant committed an extraneous crime or bad act or could be held criminally responsible for an extraneous crime or bad act, then you may consider such evidence in assessing the defendant's punishment. However, if you have a reasonable doubt that the defendant committed an extraneous crime or bad act or could be held criminally responsible for an extraneous crime or bad act, then you may not consider such evidence in assessing punishment.

Over appellant's objection, the trial court included in the punishment-phase jury charge the following instruction:

Voluntary intoxication does not constitute a defense to the commission of a crime. "Intoxication" means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.[2]

("Voluntary Intoxication Instruction").

During the State's closing argument in the punishment phase, the prosecutor referred to appellant's reaction to testimony from the sister of the man appellant allegedly killed in the capital murder. Appellant objected, and the trial court overruled the objection.

The jury assessed punishment at confinement for life.

*This Court's Affirmance*

On appeal in this court appellant asserted in three issues that (1) the trial court erred in failing to charge the jury on a lesser-included offense during the guilt/innocence phase of the trial, (2) the trial court erred, during the punishment

---

[2] The first sentence of this instruction tracks the language of section 8.04(a) of the Texas Penal Code, and the second sentence tracks the language of section 8.04(d). *See* Tex. Penal Code § 8.04 (West, Westlaw through 2015 R.S.).

4

phase of trial, in instructing the jury that voluntary intoxication is not a defense to the commission of a crime, and (3) the trial court reversibly erred in overruling appellant's objection to the prosecutor's closing argument during the punishment phase. *See Smith v. State*, 522 S.W.3d 628, 632 (Tex. App.—Houston [14th Dist.] 2017) (plurality op.), *rev'd*, 577 S.W.3d 548 (Tex. Crim. App. 2019). A majority of the court agreed that the appellant's first and third issues should be overruled and also agreed on the analysis of these issues. *See id.* at 631. The panel divided three ways on the second issue. *See id.* at 632. In reversing this court, the Court of Criminal Appeals did not adopt any of the three analyses.

In this court's original disposition, the author of the lead opinion found no error in the trial court's Voluntary Intoxication Instruction, relying on a part of the punishment-phase jury charge in which the trial court instructed the jury that in fixing appellant's punishment the jury could take into consideration all the facts shown by the evidence admitted in the case, and concluding that the trial court did not instruct the jury in the charge that it could not consider the voluntary-intoxication evidence in mitigation of appellant's punishment. *See id.* at 632–34. Justice Jewell authored a concurring opinion in which he concluded that the trial court erred in giving the challenged instruction, appellant preserved error on his second issue, and the erroneous instruction did not cause appellant actual harm under the circumstances of this case. *See id.* at 640–47 (Jewell, J., concurring). In his harm analysis, Justice Jewell relied partly on the part of the punishment-phase jury charge in which the trial court instructed the jury that in fixing appellant's punishment the jury could take into consideration all the facts shown by the evidence admitted in the case. *See id.* at 642–44. Justice Christopher authored a dissenting opinion in which she concluded that the challenged instruction was error, appellant preserved error on his second issue, and the erroneous instruction caused appellant "some harm." *See*

5

*id*. at 647–52 (Christopher, J., dissenting).

*Review by the Court of Criminal Appeals*

Appellant sought discretionary review in the Court of Criminal Appeals, asserting various grounds. *See Smith v. State*, 577 S.W.3d 548, 550, 555 (Tex. Crim. App. 2019). The high court granted review but addressed only appellant's argument that the trial court erred in giving the Voluntary Intoxication Instruction because it violated article 36.14 of the Texas Code of Criminal Procedure. *See id*. at 550. The Court of Criminal Appeals concluded that this instruction did not comply with article 36.14 and that the trial court erred in giving it. *See id*. at 550, 554–55. The high court reversed this court's judgment and remanded the case to this court to determine whether appellant preserved error in the trial court as to this charge error and to determine if this charge error was harmful.

## II. ISSUES AND ANALYSIS ON REMAND

The first question in analyzing a jury-charge issue is whether the charge contains error. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). If the charge contains error, then we analyze that error for harm. *See Ngo*, 175 S.W.3d at 743. Preservation of charge error does not become an issue unless and until we assess harm. *See id*. The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection. *See id*. Jury charge error requires reversal when the defendant properly objected to the charge and we find "some harm" to appellant's rights. *See id*. When the defendant fails to object or states that he has no objection to the charge, we will not reverse unless the record shows "egregious harm" to the defendant. *See id*. at 743–44.

The Court of Criminal Appeals already has answered the first question by

determining that charge contains error. *See Smith*, 577 S.W.3d at 550–55. On remand, we must determine whether appellant preserved error in the trial court as to the charge error the Court of Criminal Appeals identified and then consider whether this error caused harm. *See id*. at 554–55; *Ngo*, 175 S.W.3d at 743–44. We begin by examining the error the high court identified, and then we address preservation of error and the harm analysis.

## A.    What error did the Court of Criminal Appeals find?

In its review of this court's judgment, the Court of Criminal Appeals began by noting that under article 37.07, section 3(a)(1) of the Code of Criminal Procedure, the State may offer "evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt . . . to have been committed by the defendant or for which he could be held criminally responsible." Tex. Code Crim. Proc. art. 37.07, § 3(a)(1). The high court concluded that this language contemplates four possibilities: (1) the State may present evidence that the defendant personally committed an extraneous crime; (2) the State may present evidence that the defendant is "criminally responsible" for an extraneous crime committed by someone else; (3) the State may present evidence that the defendant personally committed an extraneous bad act; and perhaps (4) the State may present evidence that the defendant is "criminally responsible" for an extraneous bad act committed by someone else. *See Smith*, 577 S.W.3d at 550.

The Court of Criminal Appeals then addressed its opinion in *Haley v. State*, in which the high court determined that the court of appeals had erred in holding the trial court erred in admitting evidence in the punishment phase of appellant's involvement in an extraneous murder committed by her boyfriend because the evidence did not show beyond a reasonable doubt that the defendant was guilty of murder as a party to that offense. *See* 173 S.W.3d 510, 512–15 (Tex. Crim. App.

7

2005). In its analysis, the *Haley* court stated that under article 37.07, section 3(a), "it is irrelevant whether the conduct the offering party is attempting to prove is, or can be characterized, as an offense under the Texas Penal Code." *Id*. at 514–15. The *Haley* court also stated that "the statutorily imposed burden of proof beyond a reasonable doubt does not require the offering party to necessarily prove that the act was a criminal act or that the defendant committed a crime." *Id*. at 515. The *Haley* court interpreted article 37.07, section 3(a) as requiring proof beyond a reasonable doubt of a defendant's involvement in the act itself, rather than the elements of a crime necessary for a finding of guilt. *Id*.

The Court of Criminal Appeals, in *Smith,* acknowledged that its opinion in *Haley* plausibly could be understood to mean that whether a defendant's extraneous conduct meets the legal definition of a criminal offense is never a relevant consideration in the punishment phase of trial. *See Smith*, 577 S.W.3d at 551. The high court clarified that when it said in *Haley* that "it is irrelevant whether the conduct the offering party is attempting to prove is . . . an offense," the court did not use the word "irrelevant" in an evidentiary or Rule of Evidence 401 sense. *See id*. Rather, according to the *Smith* court, the *Haley* court "used the word 'irrelevant' in a more general, rhetorical sense—to make the point that, even if a particular act is not unlawful, and therefore not a 'crime,' it may still be admissible in the punishment phase as a bad act." *Id*. According to the high court, it did not say in *Haley* that the State is forbidden from pointing out to the jury that the defendant's extraneous conduct was, not just "bad" in a normative sense, but also unlawful. *Id*. The Court of Criminal Appeals stated that though the *Haley* court clarified that the offering party need not "necessarily" establish that the extraneous act was criminal, the *Haley* court did not say that the offering party is prohibited from doing so. *Id*.

In *Smith*, the high court proclaimed that though the trial court's charge should

8

not suggest to the jury that the jury should give more weight in assessing punishment to extraneous conduct if the jury finds the conduct to be criminal rather than just a "bad act," the State should not be prohibited from arguing to the jury that the extraneous conduct is unlawful, provided that the trial court deems the unlawfulness of the conduct relevant to sentencing. *See id*. at 552. Based on this proposition and the trial court's duty under article 36.14 to "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case," the high court concluded that a trial court would not err by informing the jury of the circumstances under which it could permissibly find that the defendant had previously "committed . . . [a] crime." Tex. Code Crim. Proc. art. 36.14; *id*. art. 37.07, § 3(a)(1); *Smith*, 577 S.W.3d at 552. The Court of Criminal Appeals noted that it was dealing with a situation in which the trial court granted a request for a clarifying instruction, rather than a situation in which the trial court denied a request. *Smith*, 577 S.W.3d at 552. The high court emphasized that it was not saying that a trial court must provide the jury with Penal Code definitions for the extraneous offenses the State seeks to prove in the punishment phase. *See id*. The high court stated that the only issue it was addressing was whether the trial court erred by agreeing to give a section 8.04(a) instruction on voluntary intoxication in the punishment-phase jury charge.

The Court of Criminal Appeals turned to Penal Code section 8.04(a), in which the Legislature provides that "[v]oluntary intoxication does not constitute a defense to the commission of crime." Tex. Penal Code § 8.04(a); *see Smith*, 577 S.W.3d at 552. The high court concluded that because section 8.04(a) and article 37.07, section 3(a)(1) both refer to the "commission of a crime," so long as the facts support it, the trial court has discretion to give an appropriately limited instruction on voluntary intoxication during the punishment phase of trial. *See Smith*, 577 S.W.3d at 552–53. The Court of Criminal Appeals concluded that if there is punishment-phase

9

evidence that might lead the jury to conclude that the defendant's intoxication somehow turned the defendant's otherwise-unlawful bad acts into lawful ones, the trial court has discretion to give a voluntary-intoxication instruction. *See id*. at 553.

The high court then addressed how the trial court should formulate a voluntary-intoxication instruction for the punishment phase. The Court of Criminal Appeals concluded that so long as the trial court deems evidence of the defendant's intoxication "relevant to sentencing," the jury properly may treat that evidence as mitigating the defendant's punishment. *See id*. at 554. The high court stated that the only permissible use of a voluntary-intoxication instruction during the punishment phase is to prevent the jury from treating otherwise-unlawful conduct as lawful on account of the defendant's intoxication. *See id*. at 554. Thus, a trial court may not use a voluntary-intoxication instruction during the punishment phase to instruct the jury that it may not treat the defendant's intoxication as mitigating the punishment for the charged offense. *See id*. at 553–54. The high court stated that "insofar as the indicted conduct is concerned, the jury could only understand [an instruction that tracked section 8.04(a)'s language] to mean that, even if the defendant was intoxicated during the commission of the offense, his intoxication 'is no defense' in the sense that it has no mitigating value." *Id*. at 553. According to the high court, to avoid misleading the jury in this way, the trial court carefully and expressly must limit any punishment-phase voluntary-intoxication instruction so that it applies only to the jury's consideration of extraneous-conduct evidence. *See id*. at 554. The Court of Criminal Appeals concluded that a trial court may not simply track the language of section 8.04(a). *See id*. at 553.

The high court concluded that because the Voluntary Intoxication Instruction simply tracked section 8.04(a)'s language, it violated article 36.14 and the trial court erred in giving it. *See id*. at 550, 554–55. Having unpacked the issue in these terms

and having found error in the charge, the high court reversed this court's judgment and remanded the case for us to determine whether appellant preserved this identified error and whether this error was harmful. *See id*. at 554–55. The State did not argue on original submission in this court that appellant did not preserve error on his second issue, and the State argued on original submission that the "some harm" legal standard applied to the harm analysis on the second issue. In its opinion, the Court of Criminal Appeals stated that an argument could be made that appellant did not preserve error, but the court did not determine this issue. *See id*.

**B.    Did appellant preserve error in the trial court?**

At the State's request the trial court instructed the jury during the punishment phase that "voluntary intoxication does not constitute a defense to the commission of a crime." The attorney for the State asserted during the charge conference that the State requested this instruction because documentary evidence showed that appellant was under the influence of Xanax and because of Dr. Terry Rustin's testimony. The State said that it requested this instruction so that the jury would not "excuse the defendant's behavior on the aggravated robbery." The State said that appellant was allowed to offer Dr. Rustin's testimony as mitigation of punishment, but the State said that the instruction would tell the jury that appellant's intoxication did not excuse appellant's behavior in committing the aggravated robbery. The State did not say that it requested the instruction because there was punishment-phase evidence that might lead the jury to conclude that the defendant's intoxication somehow turned the defendant's otherwise-unlawful bad acts into lawful ones.

Appellant timely objected to the Voluntary Intoxication Instruction, asserting that it was not appropriate in the punishment phase of the trial. Appellant did not object on the ground that no voluntary-intoxication instruction is ever appropriate in the punishment phase of the trial. Instead, appellant objected that this instruction

11

was not appropriate in the punishment phase, an assertion that the Court of Criminal Appeals sustained in its review of this case. *See id.* at 554–55. Appellant also asserted that the instruction completely "takes away" Dr. Rustin's testimony by telling the jury to ignore it. Appellant also stated that it was appropriate for appellant to submit evidence in mitigation of punishment and that this instruction would "take that away from [appellant]." The high court made a similar point in reviewing this case. *See id.* at 553.

The trial court stated that it would allow appellant to argue the mitigation aspect of this evidence but that the court would leave the Voluntary Intoxication Instruction in the charge, thus implicitly overruling appellant's objection. *See* Tex. R. App. P. 33.1(a)(2). The trial court stated that it was leaving the instruction in the charge because the court did not want the jury to think that because appellant was using Xanax, there should be no punishment for the aggravated robbery. The trial court did not state that it was submitting this instruction to address the evidence as to appellant's extraneous offenses.

On remand, the State asserts that appellant's objection was not specific enough to alert the trial court to the charge error the Court of Criminal Appeals identified. Appellant timely objected that the Voluntary Intoxication Instruction was not appropriate in the punishment phase — an assertion the high court sustained. *See id.* at 554–55. Appellant asserted that the instruction completely "takes away" Dr. Rustin's testimony by telling the jury to ignore it. Appellant also stated that it was appropriate for appellant to submit evidence in mitigation of punishment and that this instruction would "take that away from [appellant]." We conclude that appellant's objection sufficed to make the trial court aware of the error the Court of Criminal Appeals identified in this case. *See Marks v. State*, 525 S.W.3d 403, 409–10 (Tex. App.—Houston [14th Dist.] 2017), *aff'd*, 560 S.W.3d 169 (Tex. Crim. App.

12

2018).

The State also argues that appellant did not preserve error because he did not object that the trial court failed to limit the instruction so that it applied only to his extraneous conduct. The State did not say that it was seeking the Involuntary Intoxication Instruction to apply to appellant's extraneous conduct. In addition, the State cites no case in which a court holds that a party objecting to an erroneous jury instruction requested by the opposing party must point out an alternative way for the trial court to draft the instruction that would be proper.

On this record, we conclude that appellant preserved error in the trial court as to the charge error the Court of Criminal Appeals identified. *See Jordan v. State*, 593 S.W.3d 340, 346–47 (Tex. Crim. App. 2020); *Ngo*, 175 S.W.3d at 743–44; *Marks*, 525 S.W.3d at 409–10.

## C.   Did the error in the charge cause "some harm"?

Because appellant preserved error, we will reverse if the error caused appellant "some harm." *Jordan*, 593 S.W.3d at 346. "Some harm" means actual harm and not merely a theoretical complaint. *Id*. at 347. If we conclude the error was calculated to injure the defendant's rights, we must reverse. *See* Tex. Code Crim. Proc. art. 36.19; *Jordan*, 593 S.W.3d at 347. To assess harm, we must evaluate the whole record, including the jury charge, contested issues, weight of the probative evidence, arguments of counsel, and other relevant information. *Jordan*, 593 S.W.3d at 347. We examine each of these factors in turn.

***The Entire Jury Charge.*** The trial court's punishment-phase charge contains eleven pages of instructions. The first five pages address the punishment range, the availability of community supervision, and the law regarding credits for good time and parole. All of these subjects flow necessarily from the conviction for the charged offense, not from the admission of the extraneous-offense evidence.

13

The challenged instruction appears on the sixth page. Reserved entirely for the Voluntary Intoxication Instruction, the page contains no text signaling that the instruction is limited to any extraneous offenses. Immediately following it is an instruction to the jury that "the mere presence of the defendant at the scene of the offense is not sufficient to conclude the accused committed the offense beyond a reasonable doubt." Following that instruction, the trial court directed the jury that it could consider evidence of an extraneous crime or bad act in assessing punishment even if the defendant had not yet been charged with or finally convicted of the crime or act only if the State had shown beyond a reasonable doubt that the defendant committed the extraneous crime or bad act or that it is one for which the defendant could be held criminally responsible. Towards the end of the charge, the trial court instructed the jury that "in fixing the defendant's punishment . . . you may take into consideration all the facts shown by the evidence admitted before you in the full trial of this case." Though one might argue that this later instruction—that the jury should consider all of the evidence—would cure or eliminate any confusion the challenged instruction created, the Court of Criminal Appeals implicitly rejected this argument by rejecting the plurality opinion's error analysis, which relied heavily on this language. *See Smith*, 577 S.W.3d at 550–55; *Smith*, 522 S.W.3d at 632–34. The high court stated that "insofar as the indicted conduct is concerned, the jury could only understand [an instruction that tracked section 8.04(a)'s language] to mean that, even if the defendant was intoxicated during the commission of the offense, his intoxication 'is no defense' in the sense that it has no mitigating value." *Id*. at 553. Thus, the high court concluded that the trial court effectively instructed the jury that evidence of intoxication should not be treated as mitigating evidence. *See id*.

***The Evidence.*** During the punishment phase of trial, the State introduced evidence that appellant had committed an extraneous offense, capital murder, the day before the aggravated robbery. The record contains evidence that appellant was

14

addicted to Xanax, and intoxicated by Xanax, at the time of the charged aggravated-robbery offense and at the time of the alleged capital murder. Appellant's sole punishment witness, Dr. Rustin, testified that Xanax can cause aggressive or criminal behavior that an individual otherwise would not exhibit because the drug reduces inhibitions and causes users not to worry about the consequences of their actions. Appellant did not offer Dr. Rustin's testimony in an effort to excuse appellant's behavior (i.e., to eliminate appellant's criminal responsibility) or to show that appellant was temporarily insane because he had been under the influence of Xanax. Rather, counsel offered this testimony to provide context and an explanation for appellant's behavior, in a permissible attempt to provide the jury with a basis for mitigating appellant's punishment. *See Smith*, 577 S.W.3d at 554; *see also Ex parte Smith*, 309 S.W.3d 53, 63 (Tex. Crim. App. 2010) (stating that "[h]is evidence of drug addiction, poverty, and a crime-ridden neighborhood was at the heart of his mitigation theory.").

Appellant needed some evidence in mitigation because the evidence portrayed him in a very poor light. The State produced evidence that appellant killed a man for his wallet; that appellant assaulted his own friend because he perceived that the friend was encroaching on a girlfriend; and that he beat an inmate to the point of rendering the inmate unconscious, just to get a private jail cell. And these are just the extraneous bad acts. When the charged offense is also considered, the State's evidence depicted appellant as violent, depraved, and heartless.

Appellant's problem with addiction stood as the only evidence offered to counter this very negative depiction. But the Court of Criminal Appeals has determined that the trial court effectively instructed the jury that evidence of Xanax intoxication should not be treated as mitigating evidence. *See Smith*, 577 S.W.3d at 553. Although not by itself dispositive, the erroneous instruction's negation of

15

appellant's sole defensive theory weighs in favor of concluding the error caused some harm. *See Reeves v. State*, 420 S.W.3d 812, 820–21 (Tex. Crim. App. 2013)

***The Arguments of Counsel.*** Defense counsel tried to contain the effect of the Voluntary Intoxication Instruction. During closing arguments, counsel repeatedly argued that appellant's Xanax addiction was not an "excuse" for his behavior. Counsel also encouraged the jury to consider appellant's addiction as "mitigation."

Perhaps unsurprisingly, the prosecutor treated the Voluntary Intoxication Instruction as a guilt-phase instruction, emphasizing the voluntary component of appellant's addiction:

> There is no—I repeat—no mitigation for his activity. He's the one that chose to put that Xanax in his mouth. He didn't have a prescription for it. He chose to take it. He now must face the consequences of those actions.

Because the prosecutor opted to close last, these words formed the final impression imparted to the jury—a view based on an erroneous instruction.

***Other Relevant Information.*** During the charge conference, the trial court gave a legally flawed justification for the Voluntary Intoxication Instruction:

> I'm going to allow y'all to argue the mitigation aspect of this, but I'm going to leave this charge in there, because I don't want the jury, as the prosecutor just stated, to become confused to think that because he was on some drug, and it might have messed his mind up, that the punishment should be diminished to the point to where there could be no punishment. So I'm going to leave it in.

Contrary to the trial court's fears, the jury could not return a verdict of "no punishment" because that sentence would fall outside the statutory range, rendering the judgment void. *See Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003) ("A sentence that is outside the maximum or minimum range of punishment is

16

unauthorized by law and therefore illegal.”); *see also* Tex. Penal Code § 12.32(a) (the minimum sentence for a first-degree felony is five years’ imprisonment).

The trial court’s comment is also startling. The trial court essentially explained that it was giving the instruction because it was concerned that the jury might look at the evidence of addiction and intoxication, regard that evidence as having reduced appellant’s blameworthiness, and then assess a lenient sentence. Of course, the very purpose of mitigating evidence is to persuade the jury in that exact manner—to show that the defendant is deserving of leniency. It is hard to imagine an error more clearly “calculated to injure the rights of [the] defendant” than an instruction so explicitly designed to negate the mitigating potential of the defendant’s own properly admitted evidence. *See Smith*, 577 S.W.3d at 553.

In addition, the jury assessed appellant’s punishment at life imprisonment, the maximum sentence permitted by law. Though this assessment by itself is not dispositive of the harm analysis, a jury’s giving the maximum punishment weighs in favor concluding that the error caused some harm. *See Erazo v. State*, 167 S.W.3d 889, 891 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding that the erroneous admission of evidence during the punishment phase of trial was not harmless in a case in which the defendant was assessed the maximum punishment).

Having considered the record under the applicable standard of review, we conclude that the erroneous Voluntary Intoxication Instruction was calculated to injure appellant’s rights and thus caused appellant “some harm.” *See Smith*, 577 S.W.3d at 552–54; *Jordan*, 593 S.W.3d at 346–47; *Reeves*, 420 S.W.3d at 820–21; *Erazo*, 167 S.W.3d at 891. We sustain appellant’s second issue.

### III. CONCLUSION

Appellant preserved error in the trial court as to the punishment-phase jury-charge error the Court of Criminal Appeals identified in its review. Because that error was calculated to injure appellant's rights, it caused appellant "some harm." Therefore, we affirm appellant's conviction, reverse the trial court's judgment as to punishment, and remand to the trial court for a new punishment hearing.


/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Christopher and Jewell.

Publish — TEX. R. APP. P. 47.2(b).